Filing # 153576057 E-Filed 07/19/2022 08:44:17 AM          CACE-22-010408

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO.: CACE-22-010408

DEVIN GRANDIS, an individual and
ADVANCED POWER TECHNOLOGIES,
LLC, a Florida corporation,

      Plaintiffs,

v.

BGIS GLOBAL INTEGRATED
SOLUTIONS US LLC, a Washington State
corporation and BIFM JERSEY TOPCO
LIMITED, a Jersey limited company,

      Defendants.

_____/

## SUMMONS

**THE STATE OF FLORIDA**

To All Singular Sheriffs of Said State

      **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of Complaint,

filed in the above-styled cause, upon the Defendant:

**BGIS GLOBAL INTEGRATED SOLUTIONS US LLC**
c/o CORPORATION SERVICE COMPANY, ITS REGISTERED AGENT
**1201 HAYS STREET**
**TALLAHASSEE, FL 32301-2525**

      The Defendant is hereby required to serve written defenses to the Complaint upon **Kenneth**

**J. Joyce, Esq. and David Robbins, Esq.,** Plaintiffs' Attorneys, whose address is:

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
**110 SE 6th Street, Suite 2600**
**Ft. Lauderdale, FL 33301**
ken.joyce@lewisbrisbois.com
david.robbins@lewisbrisbois.com
linda.yun@lewisbrisbois.com
kimberly.lowery@lewisbrisbois.com

within twenty (20) days after service of this Summons on Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If Defendant fails to do so, a default will be entered against Defendant for the relief demanded in the Complaint.

WITNESS my hand and seal of said Court this _____ day of _____, 2022.

JUL 20 2022

BRENDA D. FORMAN
as Clerk of said Court

By:_____

as Clerk

(Court Seal)

BRENDA D. FORMAN

*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator, Room 20140, 201 S.E. Sixth Street, Fort Lauderdale, Florida 33301, 954-831-7721 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you have a hearing or voice disability you can contact the court through the Florida Relay Service by calling 711.*

2

'Filing' # 153459156 E-Filed 07/15/2022 06:39:55 PM

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

CASE NO.:

DEVIN GRANDIS, an individual and
ADVANCED POWER TECHNOLOGIES,
LLC, a Florida limited liability company,

      Plaintiffs,

v.

BGIS GLOBAL INTEGRATED
SOLUTIONS US LLC, a Washington State
corporation and BIFM JERSEY TOPCO
LIMITED, a Jersey limited company,

      Defendants.

_____/

## COMPLAINT

      Plaintiffs, Devin Grandis ("Grandis") and Advanced Power Technologies, LLC ("APT"),
hereby sue the Defendants, BGIS Global Integrated Solutions US LLC ("BGIS") and BIFM Jersey
TopCo Limited ("BIFM"). BGIS, as purchaser, has breached an Asset Purchase Agreement and
engaged in subterfuge, calculated to destroy all benefits Grandis and APT negotiated as
consideration for selling a twenty-eight-year-old family owned business. The Asset Purchase
Agreement provided a performance based purchase price which Grandis augmented with favorable
business arrangements from his ancillary companies and from his employment. However, once the
deal closed, BGIS pursued an agenda to eliminate all material consideration for Grandis and APT.
With Grandis' family owned company's assets locked up for only a portion of the purchase
consideration, BGIS terminated Grandis and unjustifiably withheld his severance pay in material
breach of his employment agreement.

4878-7572-7911.3

## JURISDICTION, PARTIES, AND VENUE

1.      This is an Action seeking monetary relief in amount greater than $30,000.00. Therefore, this Action falls within the plenary jurisdiction of the Circuit Courts.

2.      Plaintiff, Devin Grandis ("Grandis"), is and was, at all material times, an individual, *sui juris*, residing in Palm Beach County Florida.

3.      Plaintiff Advanced Power Technologies LLC. ("APT"), is and was, at all material times, a limited liability company with its principal place of business in Broward County Florida.

4.      Defendant, BGIS Global Integrated Solutions US LLC ("BGIS"), is and was, at all material times, a Washington State limited liability company, with its principle place of business in King County Washington.

5.      Defendant, BIFM Jersey TopCo Limited ("BIFM") is and was, at all material times, a foreign corporation with its registered address in Jersey,. BIFM is purportedly the parent company of BGIS.

6.      This Court has jurisdiction over this Action pursuant to Florida Statute §48.193 since Defendants have breached multiple contracts requiring performance in Florida. BGIS is authorized to transact business in Florida and also conducts, engages in, and carries on business in Florida.  BIFM agseed to deliver stock options to Grandis in Florida.

7.      Venue is appropriate in Broward County, pursuant to Florida Statute § 47.011, since it is the county in which the contracts at issue were executed and the tortious conduct alleged occurred. Additionally, BIFM failed to deliver stock options to Grandis, in connection with his employment in Broward County Florida.

8.      All conditions precedent to the bringing of this Action have been performed, excused, satisfied, waived, or have otherwise occurred. BGIS has not cooperated with the

2

alternative resolution procedures in the Asset Purchase Agreement and actively stifled efforts of the Plaintiffs by not providing the Plaintiffs access to BGIS employees, business information, and otherwise failing to act in good faith. Contingency clauses in a contract inherently contain an implied duty under which the parties obligated to fulfil the contingency must make a good faith effort toward the satisfaction of the contingency. BGIS therefore waives any right to continue the alternative resolution in the Asset Purchase Agreement.

## GENERAL ALLEGATIONS

9.      APT is a family owned company and a leading provider in the U.S. of electrical, lighting, signage, electronic charging station maintenance for automobiles, and energy management systems. Grandis founded the upstart business and for the past 28 years has been integral to its steady growth. APT now employs approximately 150 employees.

10.     BGIS is a global provider of facility management, technical services and project delivery, energy and sustainability, asset management, and real estate services, with over 8,000 employees. APT provided an attractive target for BGIS providing self-performing coverage throughout United States, and adding electrical, and lighting services to BGIS' capabilities. Developing an infrastructure of knowledgeable employees, equipment, software, logistics, together with already performing customer accounts, would otherwise take years for BGIS to develop, at substantial costs.

11.     BIFM was represented to be the ultimate parent company of BGIS and was to issue stock options to Grandis as part of his employment compensation.

12.     At the end of 2021, BGIS purchased substantially all of APT's business assets for a relatively minimal upfront cost including its equipment, vehicles, inventory, intellectual property, licenses, technology, software, accounts receivables, executory contracts, and goodwill,

3

4878-7572-7911.3

together with the right to carry on the business of APT. After closing the sale, BGIS engaged in a series of actions aimed at manipulating earnings and devaluing and obstructing the business so that it could avoid the deferred purchase price based upon the company's financial performance.

13.     Two related agreements are essential to this dispute: (1) the Asset Purchase Agreement (hereinafter referred to as the "Agreement") and (2) the "Employment Agreement."

A.     THE ASSET PURCHASE AGREEMENT.

14.     On December 23, 2021, Grandis, APT, Ryster Corp., and Grandis Family Partnership LTD on the one hand, entered into the Agreement with BGIS on the other, in which BGIS agreed to purchase all of APT's business assets.[1]    The base price for the assets was $4,500,000.00 along with a consignment right to receive two deferred "earnout payments." The $4,500,000.00 base price was entirely allocated to pay existing debt incurred by APT and did not immediately result in income to APT.

15.     Payment to APT in excess of its debt was instead to be received in the form of two earnout payments,[2] based upon APT's financial performance for the periods of: (1) January 1, 2022 through December 31, 2022 and (2) January 1, 2023 through December 31, 2023. Each earnout payment is to be calculated by determining APT's earnings before interest, taxes, depreciation, and amortization (also commonly referred to as "EBITDA") for the relevant period. A higher adjusted EBITDA (as defined in the Agreement) would result in a higher earnout payment to APT (up to $5,250,000.00 per earnout) based upon calculations set forth in the Agreement. If

---

[1] The Asset Purchase Agreement (the "Agreement") is voluminous and is therefore not attached to the Complaint. The Agreement is in possession of all Parties.

[2] An earnout payment is essentially a deferred purchase price of the company which bases the deferred purchase price on the company's performance over the earnout period

adjusted EBITDA reached the thresholds contained in the Agreement, the total sum of the two earnout payments would equal up to $10,500,000.00.

16.     The Agreement also requires a determination of the "working capital" of APT. Working capital is a determination of the liquidity and sufficiency of current assets of a company in comparison to its current liabilities. A determination of working capital above the amount of $3,337,000.00 (the "Upper Collar Amount") would require BGIS to pay APT a sum equal to the working capital amount above the Upper Collar Amount. A determination of working capital below the amount of $2,877,000.00 (the "Lower Collar Amount") would require APT to pay BGIS a sum equal to the working capital amount below the Lower Collar Amount.

17.     Pursuant to the Agreement, APT calculated a "Preliminary Working Capital Statement" as referred to in the Agreement. The Preliminary Working Capital Statement stated a figure of $3,127,000.00 for APT's working capital. The Preliminary Working Capital Statement was calculated, in part, by taking into account inventory that was less than a year old, as well as inventory that was more than a year old, but still in a condition likely able to be sold or used before the items expiration. The Agreement then required BGIS to calculate working capital as of the closing date within ninety days of closing, using the same accounting "practices, policies, and methodologies" as those used by APT in the formulation of its Preliminary Working Capital Statement.

18.     The "Term Sheet" between the parties shows that BGIS was provided full access to APT's financial information satisfactory to it conducting due diligence before signing the definitive Agreement. BGIS sent consultants to inspect APT's business and APT uploaded substantial financial documentation by which BGIS could determine APT's assets and values. The Term sheet was reached as of November 18, 2021. The Agreement was entered into December 23,

2021. In practice, BGIS spent less than a month examining APT's business and its operations although full disclosure was provided.

19.     Grandis also directed other companies he controls to engage in highly favorable relationships with APT in order to fully maximize the earnout payments that would result from APT's EBITA. For instance, Grandis' company, Creative Lighting, LLC, entered into an agreement with APT as of the closing, which granted exclusive distribution rights to sell inventory to APT *at cost*. BGIS's assumption of APT's assets allowed it to gain access to wholesale cost inventory as a result of the Agreement. Team E-Motion, LLC and Energy and Environmental Design Services, LLC, other entities owned by Grandis and related parties, granted APT exclusivity for sales or services as a result of BGIS's purchase.

20.     The Agreement ultimately resulted in BGIS acquiring millions of dollars of: (a) inventory; (b) APT's account receivables; (c) APT's current and prospective business (d) all of APT's equipment; (e) an accomplished and trained workforce[3]; (g) decades old customers having a national presence; and (h) a highly favorable sales relationships with Grandis' other companies.

B.    THE EMPLOYMENT AGREEMENT.

21.     Grandis's continued operation of APT is essential to its performance and full realization of its earnout potential. Grandis is responsible for bringing in and maintaining millions of dollars in revenue, and is uniquely positioned to add substantial value to APT. Therefore, to manage APT's affairs, increase earnings, maintain client relations, and ensure that APT's performance was maximized to increase its earnout payments, Grandis and BGIS also entered into an "Employment Agreement." Grandis was hired to serve as Senior Vice President and General Manager. The Employment Agreement provides that Grandis is to be paid $300,000.00 per year

---

[3] Most of APT's workforce was subsequently hired by BGIS to manage APT and fulfill its business.

(with a significant bonus structure), with an initial term beginning on January 1, 2022 and ending December 31, 2024. (The Employment Agreement is attached hereto as **Exhibit A**).

22.    The Employment Agreement also provides Grandis the right to 500 shares of BGIS' parent company, BIFM.

23.    The Employment Agreement requires that Grandis receive a severance payment in the event he is terminated by BGIS "without cause." BGIS would, in that instance, be required to pay Grandis his remaining base salary on an accelerated basis. However, if BGIS terminated Grandis "for cause," it would have no further employment obligation or liability to Grandis.

24.    Since Grandis' presence at APT is essential to its performance and maximization of EBITDA, the Employment Agreement was drafted narrowly to only allow a termination "for cause" in the most extreme of circumstances:

> "Cause" means BGIS's good faith and reasonable determination that you have engaged in any of the following:
>
> (i)    Your material failure to perform your duties and responsibilities to BGIS, including but not limited to, a failure to cooperate with BGIS in any investigation or formal proceeding; provided, however, you shall have the right to cure such material failure to the reasonable satisfaction of BGIS (if capable of being cured) within thirty (30) days after delivery by BGIS to you of written notice requiring curative action.
> (ii)   Your commission of any act of fraud, embezzlement, dishonesty or any other intentional misconduct that results in material injury to BGIS; and
> (iii)  The unauthorized use or disclosure by you of any proprietary information or trade secrets of BGIS or any other party to whom you owe an obligation of nondisclosure as a result of a commitment you made in good faith; provided, however, you shall have the right to cure such unauthorized use or disclosure to the reasonable satisfaction of BGIS (if capable of being cured) within thirty (30) days after delivery by BGIS to you of written notice requiring curative action.

(**Exhibit A**).

7

C.   BGIS' BREACH OF THE ASSET PURCHASE AGREEMENT.

25.   Upon closing, with APT's assets fully under BGIS control and ownership and the ancillary business arrangements with Grandis' other companies firmly established, BGIS proceeded to take every opportunity to devalue, hinder, and impede Grandis and APT from performing to achieve the earnout payments based on EBITDA.

26.   BGIS targeted the working capital amount in an effort to devalue APT. As required by the Agreement, BGIS provided APT a calculation of adjusted working capital statement as of closing. BGIS' $2,159,222.00 adjusted figure for working capital was substantially less than the APT's Preliminary Working Capital amount of $3,127,000.00, and was $717,778.00 less than the Lower Collar Amount. BGIS' "calculations" if accurate would create a payment obligation from APT in the amount of $717,778.00. With every motive to understate the working capital amount, BGIS admittedly did not use the same "practices, policies, and methodologies" as those used by APT – as expressly required by the Agreement. Working capital was instead calculated by BGIS using  different practices, policies, and methodologies than those used by APT and did not include sellable inventory that was more than one year old.

27.   In attempting to reconcile the differing working capital amount statements, despite the Agreements terms, BGIS has not allowed APT to interview employees and stifled access to financial documentation BGIS claims it based its calculations upon.

28.   BGIS also did not include certain accounts receivable in the working capital statement and represented them as uncollectable bad debt – although BGIS continued to receive payments from those APT accounts. BGIS wrote off debt as being uncollectable while at the same time, receiving the benefit of payment and depositing the funds of these "uncollectable accounts."

4878-7572-7911.3

29.     Additionally, an employee at APT, Cathy Urchisin ("Urchisin") was tasked by BGIS (after the purchase) to move APT's accounts receivable data over to BGIS's database. This prohibited APT from resolving aged open accounts and discrepancies in invoices to large corporate client accounts, resulting in a failure to collect significant receivables during that time. To be clear, these large corporate clients demanded that APT reconcile the amounts charged on its prior invoices before they would provide payment. However, since BGIS prevented employees from reconciling the invoices, the funds were not timely collected, and conveniently not included within BGIS' working capital statement. These uncollected receivables are still collectable by BGIS. This breach of good faith materially affected the accounts receivable collection data used by BGIS to calculate the working capital statement in the approximate amount of $200,000.00.

30.     BGIS also delayed in paying APT's accounts payable after the purchase, leading to a diminution in reputation and an increase in costs. After the Agreement was executed on or around December 31, 2021, BGIS delayed in paying APT's vendors until mid-February of 2022. Because of BGIS' delay in timely paying APT's vendors, shipments by these vendors were put on hold and required the purchase of alternative inventory at higher prices from other sources. This harmed goodwill, led to increased costs, and delayed production, materially affecting the EBITDA. It also diverted significant operational focus from APT's executives and procurement staff as they rushed to repair BGIS' failure to pay.

31.     Adding insult to injury, BGIS was to establish its own operational accounts but failed to do so timely. BGIS then used Grandis' personal credit cards to pay for the goods and services which BGIS then failed to timely pay.

32.     BGIS also has burdened APT with approximately $100,000.00 in salary to a recruiter, while simultaneously removing APT employees from its workforce and repositioning

9

them to identical roles within BGIS. BGIS's actions have not only affected the strength of the workforce, but has also added to additional costs, both affecting APT's earnout based on its EBITDA.

33.     Next, BGIS orchestrated an ouster of Grandis, the individual primarily responsible for APT's current and future success.

D.     BGIS' BREACH OF THE EMPLOYMENT AGREEMENT.

34.     On April 7, 2022, BGIS terminated Grandis in bad faith and refused to pay him severance he is entitled to under the Employment Agreement. By doing so, BGIS avoided having to pay approximately $825,000.00 in salary, and failed to deliver options for 500 shares of BGIS' parent company, and additional bonuses that could potentially equal 50-100% of Grandis' salary, all while simultaneously disrupting APT's operations with the removal of its Senior Vice President and General Manager.

35.     Grandis' termination was represented to be based upon a joke he explained to a colleague.  At a trade show, Grandis was asked by a BGIS employee to explain an off-color joke to another BGIS female employee. Grandis was then encouraged to explain the joke by both employees. The requests of both employees, and their long standing relationship Grandis, caused Grandis to ultimately capitulate. Grandis thereby explained the joke to the female employee, as requested.

36.     Shortly thereafter, the female employee reported Grandis' telling of an inappropriate joke to BGIS. Grandis was subsequently put on leave. Grandis was not interviewed or counseled but was instead terminated by BGIS "for cause," without severance pay. In twenty-eight years of business prior to being hired by BGIS, Grandis has never once been accused of inappropriate behavior, including by the female employee who worked with Grandis for more than

4878-7572-7911.3

four years. Notwithstanding, the definition of "cause" in the Employment Agreement does not permit BGIS to terminate Grandis "for cause" as a result of telling an immature joke to a coworker.

37.     Coincidently, both the female employee and BGIS benefited substantially from Grandis' pretextual termination. In addition to not having to pay a salary or severance to Grandis, BGIS also failed to issue Grandis the 500 stock options. More importantly, BGIS has nearly guaranteed that the earnout payments will assuredly be less with Grandis' absence, since Grandis will not be able to use his knowledge, experience, contacts, relationships, and skill to maintain and increase APT's earnings.

38.     The female employee's reporting of Grandis' explanation of a joke to BGIS further had the self-serving effect of leading to her promotion and inheritance of Grandis' corporate clients worth millions of dollars. Grandis' accounts represents approximately 12-15 million dollars in revenue to APT, some of which the female employee stood to inherit with the benefit of a 2% commission. This further benefited BGIS since it must now pay the female employee and not Grandis additional commissions, which materially and practically affects EBITDA and consequently diminishes the monies flowing to APT and Grandis.

E.     BGIS'S OTHER BAD ACTS.

39.     On information and belief, BGIS also continues to use Grandis' facsimile stamp to endorse documents such as cheques and other payment instruments in Grandis' name. Grandis does not agree to BGIS' continued use of his facsimile stamp and has communicated his objection to BGIS numerous times. BGIS's misappropriation of Grandis' signature to verify, execute, or void financial instruments is actionable under Florida law as a forgery. BGIS makes purchases from Creative Lighting, LLC ("Creative Lighting") for its benefit, despite not owning Creative

4878-7572-7911.3

Lighting. BGIS carries out these unauthorized purchases by using Grandis' facsimile stamp without authorization.

40.     BGIS' actions show an orchestrated effort to eliminate earnings from APT and Grandis' other companies while simultaneously positioning itself to have acquired all of APT's assets for far below its value. BGIS has hamstrung APT by terminating Grandis and has failed to cooperate with a resolution of the dispute in good faith by withholding access to BGIS employees and financial information from APT and Grandis. The Plaintiffs have been forced to bring the instant Action to recover damages for BGIS' misconduct.

41.     Notwithstanding an agreement that BGIS would deliver Grandis personal email account, BGIS has taken the unreasonable position that the Grandis' personal email account belongs to it and has repeatedly refused return it or allow him access.

42.     BGIS refuses to take Grandis's name off vehicle leases for Sustainable Management Solutions, LLC despite agreeing to do so. BGIS's failure to remove Grandis' name is materially affecting his creditworthiness and ability to borrow money.

43.     The Plaintiffs have been forced to retain the undersigned attorneys and is required to pay them their reasonable fee for the prosecution of this Action.

## COUNT I: BREACH OF THE EMPLOYMENT AGREEMENT
(Grandis against BGIS and BIFM)

44.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

45.     Grandis and BGIS entered into an Employment Agreement in which BGIS promised to employ Grandis for $300,000.00 per year (plus bonus), and give Grandis 500 shares of BGIS's parent company, BIFM.

4878-7572-7911.3

46.     Since BGIS and BIFM have combined their property (BGIS's cash and BIFM's stock options) in conducting a particular business deal, they are considered partners and/or joint adventurers for the purposes of Grandis' employment.

47.     BGIS materially breached the Employment Agreement by terminating Grandis for "cause" for explaining a joke to a BGIS colleague, per that employee's request. Nothing in the Employment Agreement allows BGIS to terminate Grandis "for cause" for explaining a joke to a colleague, especially when such joke did not result in material injury to BGIS. The Employment Agreement was drafted narrowly to only allow a termination for cause in the most extreme of circumstances.

48.     BGIS and BIFM also materially breached the Employment Agreement when they failed to provide Grandis the 500 stock options he is entitled to under the Employment Agreement.

49.     BGIS's material breach has damaged Grandis by depriving him of his severance pay, *i.e.*, $300,000.00 per year until December 31, 2024 (approximately $825,000.00). BGIS' material breach has also resulted in it improperly withholding 500 shares in stock options which Grandis is entitled to.

WHEREFORE, Grandis demands that this Court enter judgment against BGIS and BIFM in favor of Grandis for: compensatory damages, and for any further relief this Court may deem just and proper.

### COUNT II: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING REGARDING THE EMPLOYMENT AGREEMENT
(Grandis against BGIS)

50.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

4878-7572-7911.3

51.     A covenant of good faith and fair dealing is implied in every contract and imposes a duty on each party to act in good faith and deal fairly regarding the performance of a contract. Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The Employment Agreement is a contract that contains an implied covenant of good faith and fair dealing.

52.     The Employment Agreement provides that BGIS may only terminate Grandis for "cause" pursuant to certain terms of the Employment Agreement. BGIS abused its discretion in exercising its ability to terminate under the terms of the Employment Agreement.

53.     BGIS breached the covenant of good faith and fair dealing by terminating Grandis in bad faith for explaining a joke to a colleague upon her request. The spirit of the Employment Agreement would not allow Grandis' joke to give rise to a termination "for cause."

54.     BGIS's breach of the implied covenant of good faith and fair dealing has damaged Grandis by depriving him of his severance pay, *i.e*, $300,000.00 per year until December 31, 2024 and by depriving him of stock options of BGIS's parent company.

WHEREFORE, Grandis demands that this Court enter judgment against BGIS in favor of Grandis for: monetary damages, consequential damages, lost profits, and for any further relief this Court may deem just and proper.

### COUNT III: BREACH OF THE ASSET PURCHASE AGREEMENT
(APT against BGIS)

55.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

56.     APT entered into the Agreement with BGIS for the sale of assets of APT to BGIS.

57.     The Agreement provides that both parties are to calculate and then agree on a Working Capital Amount which may result in payment from one party to the other pursuant to the

14

terms of the Agreement. The Agreement <u>requires</u> that BGIS use the same "practices, policies, and methodologies" as those used by APT in the Preliminary Working Capital Statement when calculating BGIS' working capital statement.

58.     BGIS materially breached the Agreement by not using the same practices, policies, and methodologies as those used by APT by, at a minimum:

      a.  Not including certain accounts receivable which had current payments with APT in the Working Capital Amount Calculation.

      b.  Not including likely sellable inventory which was more than one year old.

59.     Further, BGIS did not let Urchisin, the accounts receivable manager, resolve outstanding payments from large corporate clients, which materially affects BGIS' working capital statement calculation.

60.     APT has been damaged by BGIS's material breach of the Agreement since the working capital amount was not adjusted as required by the Agreement, leading to BGIS claiming an adjustment resulting in an obligation by APT to pay BGIS $717,778.00, and failing to determine the true amount.

WHEREFORE, APT demands that this Court enter judgment against BGIS in favor of the APT for: compensatory damages, and for any further relief this Court may deem just and proper.

### COUNT IV: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING REGARDING THE AGREEMENT
(APT against BGIS)

61.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

62.     A covenant of good faith and fair dealing is implied in every contract and imposes a duty on each party to act in good faith and deal fairly regarding the contracts performance.

15

Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance. The Agreement, as any other, therefore contains an implied covenant of good faith and fair dealing.

63.     The Agreement provides that BGIS must provide an adjusted working capital statement to APT, which calls for the implementation of precise principles, practices, policies, and methodologies to be used to make that calculation.

64.     BGIS breached the covenant by not using good faith and fair dealing, abusing its discretion and obligations under the parameters of the Agreement by, at a  minimum:

> a.  Not including certain accounts receivable which had current payments with APT in the Working Capital Amount Calculation.
>
> b.  Not including inventory that remained likely saleable but which was more than one year old.

65.     Further, BGIS did not let Urchisin resolve outstanding payments from large corporate clients, which materially affected BGIS' working capitals statement calculation.

66.     APT has been damaged by BGIS's material breach of the Agreement since the working capital amount was not adjusted as required by the Agreement, leading to BGIS claiming an adjustment resulting in an obligation by APT to pay BGIS $717,778.00, and failing to determine the true amount.

WHEREFORE, APT demands that this Court enter judgment against BGIS in favor of the APT for: monetary damages, consequential damages, lost profits, and for any further relief this Court may deem just and proper.

16

## COUNT V: CIVIL REMEDY FOR CRIMINAL ACTIVITIES UNDER FLA. STAT., §772.104
(Grandis against BGIS)

67.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

68.     After Grandis was terminated, upon information and belief, BGIS continued to use Grandis' facsimile stamp in order to approve documents, enter into contract, authorize activities, and/or remove funds from bank accounts. Grandis does not, and did not, allow BGIS to use his facsimile stamp after his termination. BGIS's activity is considered "Criminal Activity" as defined in Fla. Stat., §772.102(24).

69.     The precise date and time of each alleged violation of Florida Statute ¶772.104[4] will be confirmed in discovery as to the specific date and time that each document was unlawfully stamped.

70.     Upon information and belief, BGIS has used Grandis' facsimile stamp: (1) to directly or indirectly collect proceeds; (2) to collect on an unlawful debt; (3) to invest; and (4) to acquire or maintain title, rights, interest, and equity in property or in the operations of an enterprise. The precise misconduct will be revealed during discovery.

71.     Grandis has been damaged by BGIS's criminal activity, the precise amount of which will be revealed in discovery.

WHEREFORE, Grandis demands that this Court enter judgment against BGIS in favor of Grandis for: monetary damages, consequential damages, lost profits, treble damages, attorney's fees and court costs, and for any further relief this Court may deem just and proper.

---

[4] See also Florida Statutes, Chapter 831.

17

## COUNT VI: SECURITIES FRAUD UNDER FLORIDA BLUE SKY LAWS
(Grandis against BGIS and BIFM TopCo Limited)

72.     Plaintiffs reallege and incorporate the "General Allegations" as set forth in Paragraphs 1 to 43.

73.     Under Fla. Stat. Ann. § 517.301, it is unlawful to engage in fraud in connection with the offer, sale or purchase of any investment or security. With few exceptions, a securities fraud claim under that act is nearly identical to a securities fraud claim under the related federal law. Chapter 517 is titled the "Florida Securities and Investor Protection Act and is commonly referred to as Florida' Blue Sky Laws.

74.     On December 21, 2021, BGIS and BIFM, through its authorized representatives, misrepresented to Grandis that BGIS would offer to Grandis options to purchase shares of its parent company, BIFM. At the time the representation was made, BGIS knew that it had no intention to provide Grandis with shares in the parent company BIFM and that it would cause Grandis to be terminated from BGIS prior to the options being given to Grandis.

75.     Stock options are a security. The option to purchase the stocks of BSFM is: (1) an investment of money, (2) in furtherance of a common enterprise to fund BIFM, and (3) contemplates an expectation of profit derived by Grandis solely by the efforts of BIFM. Further stocks are a *per se* security pursuant to Florida Statute §517.021.

76.     Grandis relied to his detriment on BGIS's misrepresentation in the Employment Agreement regarding the stock options and executed the Agreement and Employment Agreement without pursuing alternative consideration for doing so.

77.     Grandis has been damaged by BGIS's misrepresentation regarding the stock options by being a party to the Agreement and Employment Agreement without receiving

4878-7572-7911.3

consideration he would have otherwise bargained for had Grandis known that BGIS never intended to give him the stock options.

WHEREFORE, Grandis respectfully requests that this Court enter a judgment against BGIS and BIFM in Grandis' favor for: monetary damages, consequential damages, compensatory damages, incidental damages and such other relief as the Court deems just..

## DEMAND FOR JURY TRIAL

Plaintiffs requests a jury trial for all causes of action so triable.

Dated: July 15, 2022                    Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiff*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone:   (954) 728-1280
Facsimile:    (954) 678-4090
E-Service: ftlemaildesig@lewisbrisbois.com

By: *s/Kenneth J. Joyce*
      Kenneth J. Joyce
      Florida Bar No. 986488
      David M. Robbins
      Florida Bar No.: 1012340
      ken.joyce@lewisbisbois.com
      david.robbins@lewisbrisbois.com
      linda.yun@lewisbrisbois.com
      kimberly.lowery@lewisbrisbois.com

19

# EXHIBIT A



**BGIS** _ENABLING_
_INNOVATION_

210 S. Hudson Street
Suite 318
Seattle, WA 98134

**PERSONAL AND CONFIDENTIAL**

December 21, 2021

Devin Grandis

Dear Devin,

We are delighted to confirm that BGIS Global Integrated Solutions US LLC ("**BGIS**") has agreed to acquire the business from Advanced Power Technologies LLC ("**APT**"). We expect the acquisition to occur on December 31, 2021 ("**Acquisition Date**") with a transition to be completed shortly afterwards.

In connection with the acquisition, we are excited to present to you this offer of employment as follows:

- Your initial role within the company will be as the Senior Vice President and General Manager
- The position is full-time.
- Your People Leader will be Mark Marquis.
- The location of the position is Pompano Beach, FL.
- Your start date with BGIS will be no later February 7, 2022 and is subject to the transition of services from APT to BGIS.

## Compensation Structure

Base Salary:     Your starting base salary will be $300,000 gross per year and the position is considered exempt, under the Fair Labor Standards Act.

Bonus:     The BGIS annual bonus program is known as the Optimizer Annual Incentive Award ("**OAIA**"). Upon your commencement of employment with BGIS, you will be invited to participate in BGIS's OAIA Plan, subject to its terms and conditions, including the following:

    (i)     your target bonus eligibility will be 50% of your base salary (with a multiplier of potentially up to 100% of your base salary based on results exceeding the financial plan); and

    (ii)     the payment of the target bonus, or any bonus, is condition upon the company achieving financial performance thresholds.

    Notwithstanding the foregoing, the OAIA Plan details will be provided to you within the first 90 days of your employment. Management reserves the right to make changes to the OAIA Plan as business needs dictate.

Equity:     Subject to Board approval, you will be granted an option to purchase 500 shares of BIFM Jersey TopCo Limited, the ultimate parent entity of BGIS, which will be evidenced by, and subject to the terms and conditions included in, an award agreement in the form attached as Exhibit A.

| Severance: | Executive severance is being offered to you. You may terminate your employment upon giving BGIS not less than 60 days' written notice. |

If your employment is terminated:

(i) by BGIS with Cause, then BGIS shall have no further employment obligation or liability to you under this Employment Agreement;

(ii) during the Initial Period by BGIS without Cause, then you shall be paid by BGIS, on an accelerated basis, as severance, within 30 days of separation and in exchange for a signed release in favor of BGIS all amounts due in base salary for the remaining portion of the Initial Period;

(iii) after the Initial Period by BGIS without Cause, then you shall be paid by BGIS, on an accelerated basis, as severance, within 30 days of separation and in exchange for a signed release in favor of BGIS, (a) the equivalent of 6 months of your base salary; and (b) the equivalent of your target bonus pro-rated for your time employed with BGIS in the calendar year up to the termination date.

The foregoing definition does not in any manner limit the company's ability to terminate your employment at any time.

For the purpose of this offer,

"**Cause**" means BGIS's good faith and reasonable determination that you have engaged in any of the following:

(i) your material failure to perform your duties and responsibilities to BGIS, including but not limited to, a failure to cooperate with BGIS in any investigation or formal proceeding; provided, however, you shall have the right to cure such material failure to the reasonable satisfaction of BGIS (if capable of being cured) within thirty (30) days after delivery by BGIS to you of written notice requiring curative action;

(ii) your commission of any act of fraud, embezzlement, dishonesty or any other intentional misconduct that results in material injury to BGIS; and

(iii) the unauthorized use or disclosure by you of any proprietary information or trade secrets of BGIS or any other party to whom you owe an obligation of nondisclosure as a result of a commitment you made in good faith; provided, however, you shall have the right to cure such unauthorized use or disclosure to the reasonable satisfaction of BGIS (if capable of being cured) within thirty (30) days after delivery by BGIS to you of written notice requiring curative action.

"**Initial Period**" means the period commencing on January 1, 2022 and ending at the expiry of December 31, 2024.

## Benefits, 401(k), Paid Time Off and Holidays:

Benefits are important piece of your total rewards package. As BGIS goes through this transition, you will remain on the current benefits provided by Advanced Power Technologies LLC to provide continuity. In 2022, BGIS will review the benefit package and make you aware of any changes.

## Position and Career Enhancements

The following are presented in support of your starting role and to encourage you in your career progression at BGIS:

| Mileage: | BGIS will reimburse your work-related auto expenditures through a mileage reimbursement plan at the IRS approved rates. |
|---|---|
| Training: | BGIS prides itself on growing and developing our team members. We look forward to providing you with location specific training opportunities that meet your personal & professional goals. |

These team member benefits, options and compensation structures are subject to change from time to time. Eligibility for health, life, disability, and retirement benefits is determined by the terms of the specific plans.

<u>Confidentiality and Intellectual Property</u>

BGIS and its affiliated companies have invested substantial time, money and resources in developing proprietary and confidential information and trade secrets in a wide variety of areas, including technology, marketing and work processes. BGIS will provide you with the proprietary and confidential information and trade secrets that BGIS believes necessary for you to perform well and to develop new skills. "**Confidential information**" includes any non-public information relating to the business, operations, financial affairs, performance, assets, technology, processes, plans, personnel, customers, and suppliers of BGIS or its customers. You will, as part of your normal work, also contribute to the development of BGIS proprietary and confidential information and trade secrets. You,

(a)     must not make use of any confidential information for your own purposes or the benefit of any person other than BGIS,

(b)     must keep the confidential information in the strictest confidence, and

(c)     must not copy, use or disclose to others any confidential or proprietary information or trade secrets of BGIS, its subsidiaries or affiliates, or customers for so long as such information or trade secrets remain confidential or proprietary, except as specifically authorized by BGIS in writing, either during the period you are employed by BGIS or at any time thereafter. By way of example, any client information provided in the performance of the job would be considered BGIS information.

Notwithstanding any other provision, nothing in this offer prohibits or restricts you in any way from providing information to a government authority pursuant to applicable whistleblowing regulations.

For any patentable invention arising out of, or in the course of your employment, such invention shall be the exclusive property of BGIS, and BGIS shall have the exclusive right to file patent applications in BGIS name in connection with those inventions. You must cooperate with BGIS and provide all necessary assistance in the filing and processing of such patent applications. Furthermore, you agree to waive any and all moral rights, and any similar rights, you may have with respect to any copyrights, inventions or other intellectual property arising out of, or in the course of your employment.

This offer of employment is contingent upon you successfully passing a pre-employment drug and alcohol screen, complying with the requirements of the Immigration Reform and Control Act. The offer letter is also contingent upon successful outcomes of criminal background, credit, education, and reference checks. In some cases, this includes successfully passing a client background check and security clearance.

The offer of employment at BGIS is not for a specific duration of time. BGIS is an at-will employer. Should you accept this offer, either you or BGIS may terminate employment at any time and for any reason.

If this offer is acceptable to you, please confirm your acceptance by returning a signed copy of this offer letter to my attention. Please feel free to call me at (206) 294-9115 if you have any questions about this offer.

Yours truly,

*Sherry L. Pelletier*

Sherry L. Pelletier, SCP & SPHR
VP, Human Resources
E: sherry.pelletier@bgis.com

Attachments

I hereby agree to the contents of the foregoing letter and accept this offer of employment as presented. It is my understanding that this letter does not constitute an employment contract but is only an offer of employment and does not override the at-will employment status.

_____
*Signature*

_____
*Printed Name*

_____
*Date*