UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-61477-CIV-SINGHAL

DEVIN GRANDIS and
ADVANCED POWER
TECHNOLOGIES, LLC,

      Plaintiffs,

v.

BGIS GLOBAL INTEGRATED
SOLUTIONS US LCC, and
BIFM JERSEY TOPCO LIMITED,

      Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND COMPEL ARBITRATION

**THIS CAUSE** is before the Court on Defendant BGIS Global Integrated Solutions US LLC's ("BGIS" or "Defendant") Motion to Dismiss and Compel Arbitration (DE [11]). The Court has reviewed the Motion, Plaintiffs' Response in Opposition (DE [18]), the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court grants Defendant's motion.

    **I.**   **BACKGROUND**

Plaintiffs Devin Grandis and Advanced Power Technologies, LLC ("APT") and Defendant BGIS entered into an asset purchase agreement ("Agreement"), under which BGIS agreed to purchase substantially all of APT's assets. (DE [1-1]). Subsequently, Plaintiffs filed this action against BGIS, alleging four claims. (DE [1-1]). Counts III and IV regard BGIS's alleged failure to properly calculate APT's "Working Capital," which is the difference between APT's current assets and current liabilities. (DE [1-1], [11]). The

Working Capital calculation is important to the parties because if the Working Capital calculation is above or below certain thresholds, the parties owe each other money under the Agreement. (DE [11-1]). BGIS urges this Court to dismiss Counts III and IV and to compel arbitration in accordance with the Agreement's Working Capital dispute resolution provision. (DE [11]).

The Agreement provides a detailed manual to address and resolve disputed Working Capital calculations. (DE [11-1]). First, regardless of whether the parties' calculations match, BGIS must provide APT with "reasonable access to [BGIS's] books, records, and other documents (including work papers) pertaining to or used in" calculating the Working Capital. (DE [11-1]). Additionally, the Agreement entitles APT to "make inquiries of" BGIS and BGIS's "employees, accountants, and representatives" while reviewing BGIS's calculation, and BGIS must "use its commercially reasonable efforts" to ensure cooperation with APT's inquiries. (DE [11-1]). Second, if APT objects to any of BGIS's calculations, APT must timely provide its reasonably detailed objections to BGIS. (DE [11-1]). Third, the parties must negotiate the disputed calculations in good faith. (DE [11-1]). Fourth and finally, "if [the parties] do not reach a final resolution" via negotiations, they must submit their disputed calculations to an accounting firm, defined as the "Arbitrator Firm," for resolution by an accountant, defined as the "Arbitrator." (DE [11-1]). The parties must "cooperate with the Arbitrator in making its determination[.]" (DE [11-1]). The Agreement grants the accountant broad discretion to resolve the disputed calculations, although he must render a final calculation not higher or lower than the calculations provided by BGIS and APT. (DE [11-1]).

APT requested, but was denied, access to BGIS's records and employees. (DE [18]). Additionally, the parties did negotiate the disputed Working Capital calculations, although the negotiations proved fruitless. (DE [18]).

APT argues that compelled arbitration is inappropriate for two reasons. First, APT contends that the dispute resolution provision does not include an "arbitration" clause within the meaning of the Federal Arbitration Act ("FAA"), and therefore no enforceable arbitration clause exists. (DE [18]). Although the Agreement contains a Delaware choice of law provision, BGIS argues that the purported arbitration clause is instead governed by, and enforceable under, Florida law. (DE [11]). Second, APT argues that even if the dispute resolution provision contains a valid arbitration clause, BGIS waived its right to arbitrate by failing to provide APT with "access to [BGIS's] records and employees," which—APT claims—sabotaged any possible good faith negotiations. (DE [18]). APT argues that by failing to abide by the requirements of the dispute resolution provision, BGIS is precluded from requiring APT to participate in the provision's last step—arbitration. (DE [18]).

II. **LEGAL STANDARDS**

To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d

1252, 1261 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Under the doctrine of incorporation by reference, however, courts may consider documents attached to motions to dismiss when the "document is (1) central to the plaintiff's claim and (2) undisputed," where "'undisputed' means the authenticity of the document is not challenged."[1] *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018). The court must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

### III. DISCUSSION

Resolution of this motion requires the Court to decide three questions. First, whether the FAA governs the purported arbitration clause; second, whether the dispute resolution provision includes an enforceable "arbitration clause" under the FAA; and third,

---

[1] Neither party argues that consideration of the Agreement is improper.

if so, whether BGIS nonetheless waived its right to arbitrate by failing to abide by the dispute resolution provision's requirements. Each of these questions is considered in turn.

### A. The Federal Arbitration Act Applies

Eleventh Circuit caselaw is clear: arbitration clauses are governed by the FAA unless the parties "clearly and unmistakably" provide otherwise. *See Gulfstream Aerospace Corp. v. Oceltip Aviation 1 Pty Ltd.*, 31 F.4th 1323, 1325 (11th Cir. 2022) ("Long story, short: if you want certain rules to apply to the handling of your arbitration, the contract must say so clearly and unmistakably. Otherwise, the Federal Arbitration Act ("FAA") will apply."). The presumption of the FAA's applicability is so strong that even when a contract contains a choice of law provision, the FAA still governs that contract's arbitration clause. *See id.* at 1328–29 (holding that the FAA applied to an arbitration agreement notwithstanding a Georgia choice-of-law provision in a section of the agreement labeled "Arbitration"); *Olsher Metals Corp. v. Olsher*, 2004 WL 5394012, at *1 (11th Cir. Jan. 26, 2004) (per curiam) (holding that the FAA, not the chosen law in a choice of law provision, applies to the validity, enforceability, and scope of arbitration clauses). Thus, although the Agreement contains a general choice of law provision adopting Delaware law, the FAA governs the Agreement's purported arbitration clause. *See Gulfstream Aerospace Corp.*, 31 F.4th at 1325; *Olsher Metals Corp.*, 2004 WL 5394012, at *2.

### B. The Dispute Resolution Provision Contains an Arbitration Clause

Of course, the FAA only demands enforcement of an arbitration clause if the clause is in fact an arbitration clause. *See Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1238 (11th Cir. 2008). APT argues that the clause BGIS seeks to enforce

5

is not an arbitration clause, and therefore compelled arbitration is inappropriate. To determine whether a dispute resolution clause is an arbitration clause within the meaning of the FAA, courts in the Eleventh Circuit apply a four-factor test. *See Advanced Bodycare Sols., LLC*, 524 F.3d at 1239. Specifically, this Court must consider whether the purported arbitration clause provides for:

> (i) an independent adjudicator, (ii) who applies substantive legal standards (i.e. the parties' agreement and background contract law), (iii) considers evidence and argument (however formally or informally) from each party, and (iv) renders a decision that purports to resolve the rights and duties of the parties, typically by awarding damages or equitable relief.

*Id.* All four factors need not be satisfied for a valid arbitration clause to exist. *Id.*

1. Independent Adjudicator

The dispute resolution clause at issue provides for a single, independent accountant to resolve the Working Capital dispute. (DE [11-1] ("A single certified public accountant and partner of the Arbitrator Firm designated by the Arbitrator Firm in accordance with its normal procedures shall act for the Arbitrator in connection with such engagement (the "Arbitrator")). Thus, the provision provides for an independent adjudicator.

2. Application of Substantive Legal Standards

Undoubtedly, the accountant charged with determining the proper Working Capital calculation will not apply "background contract law," as he is not charged with providing legal services. This fact, however, cannot—standing alone—prohibit a dispute resolution clause from being an enforceable arbitration clause under the FAA. If it were so, then only problems involving a strictly legal dimension could be arbitrated, rendering the enforceability of typical arbitration clauses suspect.

6

The Court also notes that while resolving the parties' Working Capital dispute, the accountant is limited by the Agreement because he may not render a calculation higher or lower than the calculations provided by BGIS and APT. (DE [11-1]). As a result, the accountant is meaningfully bound by "the parties' agreement." *See Advanced Bodycare Sols., LLC*, 524 F.3d at 1239. Thus, while this prong is only partially satisfied, its lack of complete satisfaction cannot—alone—preclude the existence of an enforceable arbitration clause.

3. <u>Consideration of Evidence and Argument by the Parties</u>

The Eleventh Circuit has explained that consideration of evidence and argument may be formal or informal. *Id.* Here, the parties must instruct the accountant to resolve the disputed Working Capital items, and the accountant's final calculation may not be higher or lower than the parties' highest and lowest calculations. (DE [11-1]). Thus, the accountant must consider evidence and argument regarding the correct calculation by reviewing the parties' calculations. The fact that this consideration is informal is of no consequence. *Advanced Bodycare Sols., LLC*, 524 F.3d at 1239. Additionally, the Agreement provides that the parties must "cooperate with the Arbitrator in making its determination[.]" (DE [11-1]). Presumably, then, the parties must submit documents to the accountant as requested, which the accountant may consider while determining the proper calculations. Thus, the accountant does consider—albeit informally—evidence and argument by the parties regarding the correct Working Capital calculation.

4. <u>A Decision that Purports to Resolve a Right or Duty of the Parties</u>

The final Working Capital calculation will determine whether BGIS owes APT additional money, whether APT owes BGIS additional money, or whether neither party

owes the other anything additional. (DE [11-1]). Therefore, the final Working Capital calculation settles important rights and duties between the parties.

In light of the factors considered above, this Court holds that the dispute resolution provision at issue does contain an arbitration clause under the FAA.

### C. BGIS Did Not Waive Its Right to Arbitrate

APT argues the fact that the Agreement contains an arbitration clause is immaterial because BGIS waived its right to arbitrate. (DE [18]). Because APT's argument is foreclosed by controlling precedent, this Court disagrees.

In *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309 (11th Cir. 2002), the Eleventh Circuit considered whether a party waived its right to arbitrate under a purchase agreement. 286 F.3d at 1311. The agreement required calculation of the seller's income; if the income exceeded a threshold, the buyer was obligated to pay the seller additional money. *Id.* Additionally, the agreement required the buyer to provide the seller access to the buyer's books and records related to the income calculation. *Id.* at 1311–12. If the buyer and seller disputed the income calculations, the parties were required to negotiate in good faith; if negotiations proved inadequate, then either party could require an accounting firm to arbitrate and settle the dispute. *Id.* at 1312.

The parties disputed the income calculation; subsequently, the seller sued the buyer and further argued that the buyer waived its right to arbitrate for two reasons. *Id.* at 1314, 1318–19. First, the seller argued the buyer failed to provide the seller with access to the buyer's books and records related to the income calculation. *Id.* at 1318. Second, the seller asserted the buyer's failure to do so tainted the subsequent negotiations such that the parties could not negotiate in good faith. *Id.* at 1319. The Eleventh Circuit rejected

both arguments. *Id.* at 1318–19. Instead, the Eleventh Circuit found, because the arbitrator had "virtually unlimited" discretion to determine the correct calculation regardless of whether the seller had access to the buyer's records, and because the buyer did in fact participate in negotiations, the buyer had not waived its right to arbitrate. *Id.*

The instant dispute regards an almost identical dispute resolution provision on almost identical facts.[2] APT alleges that BGIS's failure to provide APT with BGIS's books, records, and employees precluded the parties from negotiating in good faith, and—taken together—BGIS's conduct waived its right to arbitrate the Working Capital calculation. (DE [18]). But here, like in *Ivax*, the accountant-arbitrator maintains broad authority to resolve the disputed Working Capital calculation; indeed, the accountant's sole constraint is that his calculations may not be higher or lower than the calculations provided by APT and BGIS. *See Ivax Corp.*, 286 F.3d at 1319; (DE [11-1]). Thus, as in *Ivax*, "no matter how significantly [BGIS] may have limited [APT's] access, the arbitrator still would have been able to reach a decision because the Agreement provides that the arbitrator has virtually unlimited access." *See Ivax Corp.*, 286 F.3d at 1319. Moreover, the fact that BGIS did not grant APT access to its books, records, and employees is immaterial to the waiver analysis because the accountant is constrained solely by the parties' Working Capital calculations, both of which exist unchanged regardless of whether the parties understand why their calculations differ.

Further, APT's argument that tainted negotiations caused BGIS to waive its right to arbitrate also fails. Like in *Ivax*, APT and BGIS did in fact negotiate their dispute. *See id.* at 1319; (DE [18]). The fact that APT was not privy to BGIS's books, records, and

---

[2] In fact, this Court can discern no material differences between *Ivax* and the instant case.

9

employees prior to negotiations does not mean that BGIS waived its right to arbitrate, regardless of whether BGIS's conduct constitutes a breach of the Agreement. *See id.* at 1318–19. For the reasons explained above, BGIS did not waive its right to arbitrate under the Agreement. Therefore, this Court shall compel arbitration.

## IV.   CONCLUSION

Because the Agreement contains a valid arbitration clause, arbitration shall be compelled. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Counts III and IV and Compel Arbitration (DE [11]) is **GRANTED**. Counts III and IV are hereby **DISMISSED WITH PREJUDICE**. The Plaintiffs shall resolve all issues regarding Working Capital and Earnout Payments through the neutral Arbitrator as required by the APA.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of November 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE