UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

DEVIN GRANDIS, AN INDIVIDUAL AND ADVANCED POWER TECHNOLOGIES, LLC, A FLORIDA LIMITED LIABILITY COMPANY,

 Plaintiffs,

v.

BGIS GLOBAL INTEGRATED SOLUTIONS US, LLC, A WASHINGTON STATE CORPORATION, AND BIFM JERSEY TOPCO LIMITED, A JERSEY LIMITED COMPANY,

 Defendants.

CASE NO. 22-61477-CIV-SINGHAL/VALLE

**PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND FOR EXTENSION OF TIME**

 Plaintiffs, Devin Grandis ("Grandis") and Advance Power Technologies, LLC ("APT") (collectively, the "Plaintiffs"), by and through their undersigned counsel, hereby move for entry of an order enforcing the Settlement Agreement between Plaintiffs and Defendant, BGIS Global Integrated Solutions US, LLC ("BGIS" or "Defendant") (collectively, the "Parties") and for an extension of time to file any amended pleadings and join additional parties, and in support thereof, state as follows:

**INTRODUCTION**

 Despite the Parties reaching a settlement agreement on all material terms, including representing such agreement to the Court, and after spending weeks going back and forth finalizing and fine-tuning the language of the agreement for execution, incredulously, for the first time, on the eve of the Parties' deadline to amend the pleadings and join additional parties to the instant

93114070.1

litigation, Defendant BGIS, in the face of evidence to the contrary, including emails between counsel and representations made by BGIS's own attorneys to the Court, now claims that the Parties never had an agreement and therefore, none can be enforced. However, notwithstanding Defendant BGIS's last ditch effort to renegotiate an agreement reached with Plaintiffs weeks ago and avoid a decision it seemingly now regrets in hindsight, it is without question that the Parties have in fact agreed to the essential terms for settlement and intended to be bound by such agreement. As reflected by the facts more fully described below, any claim by Defendant BGIS that a settlement had not been reached by the Parties is nothing short of disingenuous and should not go unnoticed by this Court.

## RELEVANT FACTUAL BACKGROUND

1. On or about January 19, 2023, the Court entered an Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge (the "Order") [DE 42].

2. The Order provided, in pertinent part, for the imposition of certain filing deadlines in this matter including, but not limited to, the selection of a mediator, amendment of the pleadings and joinder of additional parties. *See* DE 42.

3. On or about February 24, 2023, the Parties held an in-person meeting at the undersigned's office in Fort Lauderdale, whereby the Parties "shook hands" after reaching an agreement regarding the material terms for settlement.

4. Consistent with the Parties' meeting of the minds and agreement reached during their in-person meeting, and to ensure that the Parties had sufficient time to memorialize the terms of settlement, on or about February 28, 2023, the Parties filed a Joint Motion for Extension of Time to Extend Deadline to Amend Pleadings and Join Additional Parties ("Joint Motion #1") [DE

93114070.1

47], wherein the Parties, in pertinent part, represented and advised the Court, that they "believe they have reached an agreement that will result in dismissal of this lawsuit but need time to finalize the agreement."

5. Thereafter, the Parties engaged in several weeks of back and forth discussions, telephone conferences, and email exchanges regarding the essential terms of settlement, including on March 10, 2023, whereby Plaintiffs' undersigned counsel provided Defendant BGIS and its counsel via email with drafts of a settlement agreement, lease termination agreement, bill of sale and term sheet based upon the Parties' prior discussions regarding the material terms for settlement.

6. In response to Plaintiffs' March 10th settlement agreement draft proposal, by email correspondence on March 16, 2023, Plaintiffs' undersigned counsel received an acceptable final proposed memorialization of the settlement agreement, lease termination agreement and bill of sale from Attorney Robert Port ("Attorney Port"), counsel of record for Defendant BGIS in the instant action, which documents genuinely reflected the Parties' agreement and meeting of the minds with respect to the material terms for settlement.

7. Later that day, following receipt of Attorney Port's email correspondence and acceptable final draft settlement documents, the Parties confirmed their agreement to the Court. More specifically, having reached an agreement regarding the essential terms for settlement, to ensure the Parties had sufficient time to finalize and execute a written settlement agreement, while continuing to avoid the cost and expense of filing any amended pleadings, Attorney Port, on behalf of Defendant BGIS, joined by Plaintiffs' counsel, David H. Haft, filed a Second Joint Motion for Extension of Time to Extend Deadline to Amend Pleadings and Join Additional Parties ("Joint

93114070.1

Motion #2") [DE 48], seeking an additional twenty-one (21) day extension of time from March 16, 2023 to April 6, 2023, within which to file any amended pleadings and join additional parties.

8.  Pursuant to Joint Motion #2, the Parties unequivocally confirmed their agreement and represented to the Court that they had "reached an agreement on the material terms for settlement that will result in dismissal of this lawsuit, and have spent the past several weeks going back and forth finalizing the agreement, and reasonably believe that a final and execution ready version of the agreement is imminent." *See* DE 48 at ¶3.

9.  Based on the representations set forth in Joint Motion #2, including the clear and unambiguous statements of the Parties regarding their agreement on the material terms for settlement, on or about March 17, 2023, the Court entered an Order granting Joint Motion #2 [DE 50], which provided, in pertinent part, the requested extension of time through April 6, 2023, within which to file any amended pleadings and join additional parties.

10. Following the filing of Joint Motion #2 and the Court's Order granting same, later in the evening on or about March 17, 2023, Plaintiffs' undersigned counsel was contacted via email by Andrew McLachlin ("McLachlin"), Senior Vice President and General Counsel for Defendant BGIS, requesting use of certain "preferred" language in the settlement agreement and related documents from the drafts previously provided by Attorney Port. Notably, despite requesting a change of language and form of settlement, McLachlin never refuted the fact that the Parties had already reached an agreement on the material terms for settlement or sought to have Attorney Port withdraw his representation to the Court that the Parties had reached such an agreement, as stated in Joint Motion #2.

11. Thereafter, in reasonable reliance on the representations made to the Court that the Parties had reached an agreement regarding the material terms for settlement, over the course of

the next few weeks, to accommodate the preferred language requested by McLachlin and resolve the ancillary issues related to the quantity, valuation, and delivery of certain inventory subject to transfer between the Parties pursuant to the settlement, Plaintiffs continuously worked in good faith to finalize the terms of the settlement agreement and related documents, spending countless hours exchanging emails, phone calls and corresponding with Defendant BGIS and its counsel to reach mutually agreeable language for the final and execution ready version of the settlement agreement and to resolve any remaining ancillary issues relating to the inventory.

12. However, notwithstanding Plaintiffs' best efforts to ascertain the quantity and value of the inventory subject to transfer pursuant to the settlement, and despite repeated representations by Defendant BGIS regarding its ability and intent to provide Plaintiffs with a list of the subject inventory, on or about March 31, 2023, Defendant BGIS advised Plaintiffs for the first time that it would be unable to provide Plaintiffs with the requested list of inventory subject to transfer under the settlement agreement.

13. Thereafter, Plaintiffs, in an effort to resolve the ancillary issues related to the inventory and finalize the language of the settlement agreement for execution, without modifying any previously agreed upon material term for settlement, sent Defendant BGIS and its counsel a revised draft of the settlement agreement and related documents by email, which requested payment of an additional $50,000.00 from Defendant BGIS under the settlement agreement in consideration for the value of the unidentifiable and unsubstantiated inventory thereunder.

14. However, despite the Parties previously reaching an agreement on the material terms of settlement, without further discussion between the Parties regarding the inventory proposal, on April 3, 2023, McLachlin via email, declared for the first time that there was no agreement between the Parties, that BGIS was withdrawing all pending settlement offers, and

93114070.1

expressed BGIS's desire to move forward with the pending litigation, in complete disregard of the prior agreement and representations made by the Parties to the Court that the material terms were agreed upon.

## LEGAL STANDARD

Under federal law, a district court has inherent power to summarily enforce settlement agreements entered into by parties in a pending case. *See Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991) (citation omitted). "Settlements are highly favored and will be enforced whenever possible." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). Indeed, settlement agreements are a favored mechanism to conserve judicial resources. *See Murchison v. Grand Cypress Hotel-Corp.,* 13 F.3d 1483, 1486 (11th Cir. 1994) ("We favor and encourage settlements in order to conserve judicial resources"). This settlement authority extends not only to written settlement agreements, but to oral agreements as well. *See Welch v. N. Am. Tank Line, Inc.*, No. 8:06-CIV-23450-T-17-MAP, 2008 WL 3982394, at *2 (M.D. Fla. Aug. 25, 2008) ("A court is empowered to enforce oral settlement agreements"). In Florida, a settlement agreement is considered to be a contract and, as such, is governed by the general principles of Florida contract law regarding both construction and enforcement. *See Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). For a valid settlement agreement to exist there must be an offer, acceptance of that offer, consideration, and a mutual meeting of the minds on all essential terms. *In re Rolsafe Int'l, LLC*, 477 B.R. 884, 902 (Bankr. M.D. Fla. 2012). If an intent to settle the essential terms can be established, "it does not matter that the agreement is not fully executed." *In re Air Safety Int'l, L.C.,* 326 B.R. 883, 888 (Bankr. S.D. Fla. 2005), *aff'd in part, rev'd in part*, 336 B.R. 843 (S.D. Fla. 2005). In Florida, settlements may exist and be enforced without being signed by the parties. *See In re Rolsafe*, 477 B.R. at 903; *see also Reed ex re Reed*

93114070.1

*v. United States*, 717 F. Supp. 1511, 1517 (S.D. Fla. 1988) ("All that is required is that the terms be clear, definite and capable of proof . . .[T]he physical act of signing a document is a mere formality where the parties clearly intend to be bound").

## ARGUMENT

**A.     Notwithstanding The Absence Of A Signed Agreement, The Settlement Agreement Must Be Enforced Because The Material Terms Were Agreed To By The Parties**

Irrespective of the fact that the Parties never formally executed a settlement agreement, enforcement of a settlement will not be precluded where the Parties have agreed to the essential terms of settlement. *See Albert v. American Family Ins. Co.,* 739 Fed. App'x 607, 609-10 (11th Cir. 2018) (affirming an order enforcing a settlement for a full general release based on an email correspondence). "**A settlement agreement does not have to be in writing and it does not have to definitely fix all details of the parties' understanding in order to be enforceable**." *Landan v. Caliber Home Loans, Inc.,* No. 0:19-CV-61984, 2019 WL 11505352, at *2 (S.D. Fla. Dec. 16, 2019), report and recommendation adopted, No. 19-CIV-61984-RAR, 2020 WL 7481144 (S.D. Fla. Jan. 7, 2020) (internal citations omitted) (emphasis added).

"As long as an intent to settle the essential elements of the cause can be established, it matters not that the agreement is not fully executed or reduced to writing, as even oral settlements have been fully recognized and approved by the Courts of this state." *Allapattah Serv., Inc. v. Exxon Corp.*, Nos. 05–21338, 91–0986, 2007 WL 7756735, *2 (S.D. Fla. Sept. 26, 2007); s*ee also Vital Pharms., Inc. v. S.A.N. Nutrition Corp.,* No. 06-60646-CIV-COHN, 2007 WL 1655421, at *6 (S.D. Fla. June 6, 2007) ("Execution of the settlement agreement is not a condition precedent to a settlement agreement, but rather is merely a procedural formality"); *Berman v. Kafka*, No. 3:10-CV-718-J-32MCR, 2012 WL 12903790, at *2 (M.D. Fla. Feb. 6, 2012), report and recommendation adopted, No. 3:10-CV-718-J-32MCR, 2012 WL 12903791 (M.D. Fla. Apr. 24,

93114070.1

2012), aff'd, 518 F. App'x 783, 784 (11th Cir. 2013) ("the Settlement Agreement, though not formally executed by Plaintiff, was agreed to by Plaintiff and is binding upon him and Defendants, and shall be effective according to its terms notwithstanding the absence of his signature").

Furthermore, established law makes clear that a settlement agreement may be reached through a series of oral agreements and email exchanges. *See In re Rolsafe*, 477 B.R. at 902; *see also Yamashiro Fin. Servs., Inc. v. Tenmark Marine, Inc.*, No. 07-20197-CIV, 2008 WL 11412137, at *2 (S.D. Fla. Mar. 3, 2008) (granting a party's motion to enforce settlement agreement finding that there was no dispute that both orally, and as memorialized by the parties' mutual exchange of correspondence confirming the terms, the parties entered into a binding settlement contract); *Jarvis v. BMW of N. Am., LLC*, No. 2:14-CV-654-FTM-29CM, 2016 WL 1162324, at *2–3 (M.D. Fla. Mar. 22, 2016) (where the trial court found that all essential and material terms of the settlement were reflected in an email, the subsequent failure to sign the settlement agreement was not an effective revocation); *Bankers Sec. Ins. Co. v. Brady*, 765 So.2d 870, 872–73 (Fla. 5th DCA 2000) (holding that an oral settlement agreement between the parties' representatives with settlement authority was binding); *Skrtich v. Thornton*, 2003 WL 24845555 (M.D. Fla. 2003) (oral settlement agreements are enforceable under both federal and Florida law).

In order for a settlement agreement to exist, the parties must have agreed on all essential terms. *See Olguin v. Florida's Ultimate Heavy Hauling,* No. 17-61756-CIV, 2018 WL 4409986, at *4 (S.D. Fla. Sept. 6, 2018), report and recommendation adopted, No. 17-61756-CIV, 2018 WL 5098834 (S.D. Fla. Sept. 28, 2018). However, **uncertainty as to non-essential terms or small items will not preclude the enforcement of a settlement agreement**. *See Broadnax v. Sand Lake Cancer Ctr., P.A.*, 819 F. App'x 799, 801 (11th Cir. 2020) (in holding that a term sheet was an enforceable settlement agreement under Florida law, the failure to include nonessential terms

93114070.1

such as the timing of payment or the consequences of a breach did not invalidate the enforceability of the settlement agreement) (emphasis added).

Here, the oral agreements, email correspondences and representations made to the Court make it evident that the settlement agreement must be enforced. The Parties have always intended to be bound by the terms of the agreement and went through great lengths to agree and memorialize the material terms. As reflected by the express language and representations made to the Court in Joint Motion #2, there was no question that following receipt of Attorney Port's email and redlined settlement drafts on March 16, 2023, that the Parties were in agreement as to the material terms for settlement and needed only additional time to work out the exact language to be included in the final and executable version of the settlement agreement. The fact that the ancillary issue relating to the inventory remained is of no consequence as there was already a meeting of the minds with respect to the material terms. Thus, because the Parties' oral and written communications, along with the representations made to the Court regarding settlement evidence that a valid agreement exists between the Parties, the Court is required to enforce the settlement agreement as a matter of law. *See Miles v. Nw. Mut. Life Ins. Co.,* 677 F. Supp. 2d 1312 (M.D. Fla. 2009) (the Eleventh Circuit has likewise held that settlement agreements reached via email are binding on the parties); *see also Reed,* 717 F. Supp at 1517 (the physical act of signing a memorialized document is considered to be a "mere formality" when the parties have clearly shown an intent to be bound).

B.  **The Settlement Agreement Must Be Enforced Because The Terms Of Settlement Are Clear, Definite, and Capable Of Proof**

All that is required to enforce a settlement agreement is that the terms be clear, definite and capable of proof. In addition, the physical act of signing a document is a mere formality where the parties clearly intend to be bound. *See Am. Appraisal Assocs., Inc. v. Am. Appraisals, Inc*., 531 F.

93114070.1

Supp. 2d 1353, 1358 (S.D. Fla. 2008); *see also Reed*, 717 F. Supp. at 1516-17. Even assuming *arguendo* that this Court finds there are portions of the settlement agreement that require revision, the Settlement Agreement must still be enforced. *See Brewster v. MSC Crociere, S.A.,* No. 14-60991-CIV, 2015 WL 13389793, at *7 (S.D. Fla. June 11, 2015) (granting a party's motion to enforce settlement concluding that the parties had entered into an enforceable settlement agreement and finding the parties' dispute as to the content of a "standard maritime release" was not fatal to the enforcement of the agreement, as the court would be able to reasonably define that term of art); s*ee also Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 409 (Fla. 1974).

Courts in this circuit have enforced settlement agreements in scenarios analogous to those here. *See Jarvis v. BMW of N. Am., LLC*, 2016 U.S. Dist. LEXIS 37679, *3-5 (M.D. Fla. March 22, 2016) (granting motion to enforce settlement agreement despite a party's failure to sign the agreement, finding there to be no legal requirement that the agreement be memorialized in a formal document). The court in *Jarvis* found that the plaintiffs' attorney had clear and unequivocal authority to enter into the settlement agreement. The court further found that the exchange of emails between the parties served as evidence of an expressed offer to settle representing an acceptance of the offer and the memorializing of the terms in the settlement agreement further signified that all essential terms were agreed upon. In reasoning, the court stated that the drafted settlement agreement was read and each party was given the opportunity to make changes and alterations after the essential terms of the settlement had been agreed upon. Because these elements were present, the court found the plaintiffs' subsequent revocation to be ineffective. *See also Reed*, 717 F. Supp. at 1518 ("[t]he settlement in this instance was made by experienced attorneys and the courts have long recognized that arms-length dispositions of litigation,

particularly settlements made through counsel by sophisticated litigants, cannot lightly be set aside merely because subsequent developments may indicate that the bargain made proved more beneficial to one party than the other.") (internal citations omitted).

Here, similar to *Jarvis*, the Parties agreed upon the essential terms of the settlement through email correspondences and oral communications. Once the essential terms had been agreed to following Attorney Port's email correspondence on March 16, 2023, counsel of the Parties confirmed this agreement to the Court, as reflected by Joint Motion #2. The record evidence is clear that there was an offer, an acceptance and agreement that the material terms for settlement had been agreed to and were memorialized in the form of a settlement agreement that each Party had the opportunity to revise. It was only after that, Defendant BGIS attempted to revoke the already agreed upon settlement. As the Court held in *Jarvis,* this Court should similarly find that Defendant BGIS's subsequent revocation to be ineffective and enforce the settlement which has been agreed upon and memorialized in writing by the Parties.

In further support of Plaintiffs' position that there was an enforceable settlement agreement with clear and definite terms, the Court should look no further than the representations of Defendant BGIS's own counsel, Attorney Port. When determining the intent of a party to be bound, courts in this circuit analyze a party's own admission. *See Corrales v. Real Stone & Granite Corp.*, No. 08-14163-CIV, 2009 WL 10712060, at *1 (S.D. Fla. Apr. 17, 2009) (granting a motion to enforce a settlement agreement where the parties had represented to the court, during a pre-trial conference, that a settlement had been reached but the parties had not (or refused to) execute the agreement); *see also Swift Fin. Corp. v. Latin House Grill, LLC*, No. 16-23903-CIV, 2017 WL 8895346, at *5 (S.D. Fla. Dec. 29, 2017), report and recommendation adopted, No. 16-23903-CIV, 2018 WL 1894718 (S.D. Fla. Feb. 5, 2018) (finding the parties entered into a valid

and enforceable settlement agreement based on Defendants' counsel's representation to the Court in a court filing that the parties had settled the case); *Reed*, 717 F. Supp. at 1516-18 (granting plaintiffs' motion to approve and enforce the parties' settlement agreement finding the Defendants' clear intent to be bound by the terms of a settlement agreement where a representation by the Defendant was made in open court that "settlement terms had been reached"). Moreover, where counsel for a party has deliberately, clearly, and unambiguously represented to the Court in a court filing that the parties had settled the case, such a judicial admission is binding on the party. *See 1899 Holdings, LLC v. 1899 Ltd. Liab. Co.*, 568 F. App'x. 219, 225 (4th Cir. 2014) ("[A] lawyer's statements may constitute a binding admission of a party if the statements are deliberate, clear, and unambiguous") (quotation marks omitted); *accord Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010); *see also Masalmeh v. United States AG*, 628 F. App'x. 661, 664 (11th Cir. 2015) (deeming "an attorney's on-record statements [during immigration removal proceedings] valid judicial admissions"). Here, counsel for Defendant BGIS represented to the Court in Joint Motion #2 that BGIS and Plaintiffs had reached an agreement as to the material terms for settlement and simply needed time to complete the formal agreement, and at no time thereafter, sought to strike or amend the representations therein. *See* DE 48. Thus, based on counsel's representations and admissions to the Court, coupled with the Parties' subsequent actions taken in furtherance of the reached settlement and to memorialize the agreement, it is undisputed that a valid settlement agreement had been reached between the Parties based on Attorney Port's March 16th email, and which agreement is enforceable and must be enforced by this Court as a matter of law.

## CONCLUSION

For the foregoing reasons, this Court should enforce the settlement agreement between Plaintiffs and Defendant BGIS.

WHEREFORE, Plaintiffs respectfully request the Court enter an Order (i) enforcing the settlement agreement between the Plaintiffs and Defendant BGIS; (ii) determining which provisions should be included pursuant to the representations made by Defendant BGIS's counsel; (iii) extending the time within which Plaintiff must file any amended pleadings and join additional parties pending adjudication by this Court of the instant motion; and (iv) granting any other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Counsel for Plaintiffs*
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: (954) 728-1280
Facsimile: (954) 678-4090
E-Service: ftlemaildesig@lewisbrisbois.com

By: *s/David H. Haft*
    Kenneth J. Joyce, Esq.
    Florida Bar No.: 986488
    ken.joyce@lewisbrisbois.com
    David H. Haft, Esq.
    Florida Bar No.: 68992
    david.haft@lewisbrisbois.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2023, a true and correct copy of the foregoing was filed via the CM/ECF system, which will serve a true and correct copy of the same to all attorneys of record.

*s/David H. Haft*
David H. Haft

93114070.1