IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **DEVIN GRANDIS, and ADVANCED POWER TECHNOLOGIES, LLC**<br><br>   **Plaintiffs**,<br><br>v.<br><br>**BGIS GLOBAL INTEGRATED SOLUTIONS US LLC, and BIFM JERSEY TOPCO LIMITED**<br><br>   **Defendants.** | CASE NO. 22-CV-61477-AHS<br><br>JUDGE RAAG SINGHAL<br><br><br>**OPPOSITION TO PLAINTIFFS'<br>MOTION TO ENFORCE SETTLEMENT<br>AGREEMENT AND FOR EXTENSION<br>OF TIME** |

**I. INTRODUCTION**

  There is no settlement between the parties because there was never an unequivocal acceptance that was a mirror image of any settlement proposal. Plaintiffs' Motion to Enforce Settlement Agreement and For Extension of Time ("Motion") alleges that the March 16, 2023 e-mail from Attorney Robert Port contained "an acceptable final proposed memorialization of the settlement." [Dkt 51 at ¶ 6.] That statement is false. Plaintiffs did not attach the transmittal e-mail as an exhibit to the Motion because it explicitly noted that "the client is still reviewing [the proposal] but wanted to get you a *preliminary* copy for your review." Exhibit J (emphasis added). Thus, there is no legitimate argument that the March 16, 2023 proposal was a "final proposed memorialization" because the transmittal e-mail explicitly stated that it was not.

  Even if the March 16, 2023 settlement draft was a final proposal acceptable to the parties, BGIS delivered a substantially different revised version the following day on March 17, 2023, and confirmed to Plaintiffs' counsel that they should review March 17th draft with their client. Instead of accepting the March 17 draft, Plaintiffs responded on March 30, 2023, with another redlined

1

14534333.4

version of the proposed settlement agreement that contained materially different terms. Importantly, Plaintiffs rejected the March 17th draft, expressly conditioning their acceptance of a settlement on BGIS's agreement to increase the settlement amount by $50,000. *See* 3/30/23 Weinstock email, attached as Exhibit D ("If you commit to raise the payment to $550,000, we will accept"). Because the response was not an unequivocal mirror-image acceptance of BGIS's alleged proposal, it is a counteroffer. In settlement discussions, a counteroffer does two things: (1) it rejects the previous offer, and (2) it makes a new, stand-alone offer. This is a foundational tenet of any form of contract negotiation. Equally foundational is the principal that an offer remains open until either the offeree accepts it, or the offeror withdraws it.

On Monday April 3, 2023, BGIS rejected Plaintiffs' counteroffer, indicated it was restarting the litigation process, and explicitly stated that all prior offers to settle were withdrawn. Thus, even if Plaintiffs did not reject the March 17, 2023 proposal—which they did—because Plaintiffs never accepted the proposal, BGIS was free to withdraw it. It is axiomatic that Plaintiffs cannot go back to a previous settlement offer that has been withdrawn and agree to it. Accordingly, there is no settlement.

The Court should deny Plaintiffs' Motion.

II. **FACTUAL BACKGROUND**

The parties met on February 9, 2023 to attempt a global resolution of this litigation and several other disputes.[1] The meeting was a settlement discussion, held without prejudice, and BGIS left that meeting with the belief that there was a settlement. Neither party memorialized the proposed terms at the time of the meeting but left the memorialization for a later time, which included execution of a final settlement agreement by February 28, 2023, and payment of the

---

[1] Plaintiffs' Motion incorrectly states the meeting took place on February 24. [Dkt. No. 51 at ¶ 3.]

2

14534333.4

settlement amount by April 15, 2023. It was evident from the extensive and ongoing negotiations following the original meeting—including multiple exchanges of significantly revised draft "term sheets" and draft settlement agreements—that there was no meeting of minds. But Plaintiffs' last revised redlined settlement agreement was the last straw and confirmed there was no meeting of the minds. On March 30, 2023, Grandis's counsel explicitly stated there was a disagreement that caused Grandis to increase his settlement demand by $50,000. As shown in the detailed factual recitation below, an agreement never existed.

      A.      **The Exchange of Terms Sheets Confirms that the Parties had Materially Different Understandings of Portions of The Purported Agreement.**

Instead of drafting a formal settlement agreement, on February 14, 2023, Plaintiffs provided their first "term sheet" in an initial attempt to memorialize the settlement discussions from five days earlier. Thereafter, the parties exchanged multiple revised terms sheets, each with significant revisions demonstrating the important differences in the parties' understanding of the settlement terms. Copies of these revised terms sheets, including all redlines showing the revisions, are attached as follows:

| Exhibit | Date | Description |
| --- | --- | --- |
| A | 2/16/23 | BGIS's first redlined revisions to 2/14/23 term sheet |
| B | 2/22/23 | Plaintiffs' redline revisions to the term sheet |
| C | 2/24/23 | BGIS's redline revisions to the term sheet |
| E | 2/27/23 | Plaintiffs' redline revision to the term sheet |
| F | 3/1/23 | BGIS's final redline revisions to the term sheet |

One material term of the proposed settlement involved BGIS's agreement to turn over certain inventory that BGIS deemed obsolete or slow moving (the "Inventory"), and the parties agreed that BGIS would include a list of that inventory as an exhibit to the settlement agreement. On February 24, 2023, BGIS sent Plaintiffs a preliminary list of the Inventory. *See* 2/24/23 Email chain at p. 4, attached as Exhibit D.

The terms of the agreement were in constant flux during the ongoing exchange of redlined versions of the term sheet, and BGIS was losing patience with the ever-changing settlement terms. On March 7, 2023, BGIS's in-house counsel, Andrew McLachlin, sent an email to Plaintiffs' counsel stating that "[w]e need to have a phone call immediately to determine whether these items can be resolved or not. I don't want to 'kick the can' on these items. We thought we had an agreement in Ft Lauderdale … That deal seems to have changed several times in the last few weeks. … Frankly, if there's no deal on what we believed was agreed, then we need to move on from this." *See* 3/7/23 McLachlin email chain at p. 1, attached as Exhibit G.

Following a discussion among the parties, on March 10, 2023, Plaintiffs' counsel sent to BGIS both (1) a final redlined revision of the term sheet, and (2) an initial draft of a settlement agreement. *See* Plaintiffs' redlined term sheet, attached as Exhibit H; Initial Settlement Agreement Draft, attached as Exhibit I ("3/10 Initial Draft" or "3/10 Initial Draft Settlement Agreement").

In response, BGIS's outside counsel—Robert Port—took a preliminary pass through the 3/10 Initial Draft Settlement Agreement to both harmonize it with the last redlined term sheet and to add additional substantive revisions. On March 16, 2023, Mr. Port forwarded the preliminary revised settlement agreement to Plaintiffs' counsel. A copy of the 3/16/23 redlined settlement agreement with the transmittal email is attached as Exhibit J (the "3/16 Draft" or "3/16 Draft Settlement Agreement"). Given its preliminary nature, BGIS was not copied on the email and was not aware that this email or 3/16 Draft had been sent.

**B.    Attorney Port's March 16, 2023 E-mail Was Expressly Not a Final Settlement Offer.**

Plaintiffs' Motion is premised on the fact that the 3/16 Draft Settlement Agreement was an "acceptable final proposed memorialization of the settlement agreement" and that it "genuinely

4

14534333.4

reflected the Parties' agreement and meeting of the minds with respect to the material terms for settlement." [Dkt. No. 51 at ¶ 6.] This is false.

Because the settlement negotiations, including the exchange of multiple revised term sheets and agreements, had been dragging on for an extended period, Mr. Port thought it would help expedite the process to send his draft redline revisions to Plaintiffs' counsel while, in parallel, the BGIS team reviewed the 3/10 Initial Draft. As expressly stated in the transmittal email from Mr. Port to Plaintiffs' counsel, "[a]s discussed," the 3/16 Draft Settlement Agreement was "preliminary" and subject to ongoing client review:



Exhibit J. It is inconceivable that Plaintiffs' counsel could believe that it was a final memorialization of the parties' agreement.

### C. Plaintiffs' Counsel Acknowledged that BGIS's Subsequent Revised Draft Sent on March 17, 2023 was "Very Different" From the 3/16 Draft and Never Contended the 3/16 Draft Controlled.

Just before 7:00 p.m. on March 17, 2023, Mr. McLachlin, sent a separate draft Settlement Agreement to Plaintiffs' counsel containing redlines to Plaintiffs' 3/10 Draft. A copy of the transmittal e-mail and redlined agreement is attached as Exhibit K (the "3/17 Draft"). The revisions shown in the 3/17 Draft redlines are even more substantial than the Mr. Port's 3/16 Draft . As Plaintiffs' counsel put it, the 3/16 Draft and the 3/17 Draft were "very different." Therefore, the

next morning, on March 18, 2023, Plaintiffs' counsel sought clarity on which was the controlling draft to "discuss with [their] client":

> From: Weinstock, Jeffrey <Jeff.Weinstock@lewisbrisbois.com>
> Sent: Saturday, March 18, 2023 8:54 AM
> To: Andrew McLachlin <Andrew.McLachlin@bgis.com>; Robert Port <rport@hahnlaw.com>; Michael Pascoe <mpascoe@hahnlaw.com>
> Cc: Platner, Michael <Michael.Platner@lewisbrisbois.com>; Joyce, Ken <Ken.Joyce@lewisbrisbois.com>; Haft, David <David.Haft@lewisbrisbois.com>
> Subject: [EXTERNAL] RE: CONFIDENTIAL - BGIS - APT/Grandis Settlement Documents
>
> Good morning Andrew,
>
> Checking in because we received a markup from Rob Port on Thursday and then this markup from you on Friday. ==These versions are very different, so we want to make sure that we know which is the version that you would like us to discuss with our client==. For example, your version seems to revert to some of the term sheet language that Michael Platner and I discussed in our recent call with the BGIS team, such as requesting updated 1099s from vendors. ==Please advise which version you would like us to use==. Thanks
>
> Jeffrey D. Weinstock
> Partner | Lewis Brisbois
> Vice Chair, Securities and Corporate Finance Practice Group
> 110 SE 6th St., 26th Floor, Fort Lauderdale, FL 33301
> Jeff.Weinstock@LewisBrisbois.com
> Direct: 954.828.0359

*See* March 18, 2023 e-mail string, attached as Exhibit M.

Importantly, Plaintiffs' counsel's response did not contend the 3/16 Draft was binding. Instead, Plaintiffs' counsel: (1) acknowledged the significant difference between the two versions, (2) asked which version to use, and (3) noted that it would still need to discuss the revisions with his client. Thus, contrary to Plaintiffs' contention in the Motion, the 3/17 Draft was not merely "wordsmithing" or "preferred language," it was a substantial change. In response to Plaintiffs' inquiry regarding which draft to review, Mr. Port immediately responded: "Use Andrew's markup. Like I said, ***my markup was preliminary pending client review***." *Id.* (emphasis added).

To demonstrate the significant difference for the Court, BGIS's counsel accepted all proposed revisions in the 3/16 Draft (from Mr. Port) and 3/17 Draft (from Mr. McLachlin) and then ran a redline compare. *See* Exhibit L. As the Court can see, there are significant material differences beyond wordsmithing.

**D.   The Parties Continued to Negotiate Material Terms Including, But Not Limited to, the Inventory**

On March 21, 2023, the parties had a conference call at 8:00 p.m. to discuss the status of the settlement agreement. *See* Exhibit N. The primary focus of the call was the Inventory portion of the settlement agreement. The parties scheduled another call on March 27, 2023—again, about the Inventory. *See* March 26, 2023 e-mail chain from Jeffrey Weinstock, attached as Exhibit O. At no time during any of these discussions did anyone from Plaintiffs communicate an acceptance of either the 3/16 Draft or the 3/17 Draft.

**E.   In Response to the 3/17 Draft, Plaintiffs Made a Counteroffer with an Increased Settlement Demand, and a Significant Amount of Additional Material Changes.**

On March 30, 2023, after the second discussion regarding the Inventory, and in response to the *3/17 Draft*, Jeffrey Weinstock sent a heavily revised Settlement Agreement with the below cover e-mail:

> From: Weinstock, Jeffrey <Jeff.Weinstock@lewisbrisbois.com>
> Sent: Thursday, March 30, 2023 2:25 PM
> To: Andrew McLachlin <Andrew.McLachlin@bgis.com>
> Cc: Michael Pascoe <mpascoe@hahnlaw.com>; Robert Port <rport@hahnlaw.com>; Platner, Michael <Michael.Platner@lewisbrisbois.com>; Joyce, Ken <Ken.Joyce@lewisbrisbois.com>; Haft, David <David.Haft@lewisbrisbois.com>
> Subject: CONFIDENTIAL - APT-BGIS Settlement Agreement
>
> Andrew,
>
> Here is an updated version of the Settlement agreement with our comments and changes.
>
> ==With respect to inventory, we believe that the inventory delivered is far less than the amount that was alleged to have been worth zero. Our client says he believes the value of the inventory is no more than $150,000 which is well short of what 70 percent of the devalued inventory would have been. We have worked hard to get to this point and in good faith, if you commit to raise the payment to $550,000, we will accept the inventory as is despite the shortfall – let's get this done!==
>
> I suggest that after you've reviewed, we get on a call to discuss any further comments you have to try to expedite getting this completed.
>
> Jeffrey Weinstock

*See* 3/30/23 Weinstock email (Exhibit D at p. 1) (including the revised redlined settlement Agreement (the "3/30 Draft")). Three things are obvious from this e-mail and the heavily revised 3/30 Draft: (1) the Inventory was a material issue, upon which the parties had not agreed; (2)

7

Plaintiffs expressly rejected the Inventory list and settlement amount and made a counteroffer; and (3) *there obviously is not an agreement*.

This e-mail and revised draft came two weeks after the 3/16 Draft from Mr. Port that Plaintiffs now contend was a binding settlement agreement. In addition, Plaintiffs' 3/30 Draft was a revision to the 3/17 Draft sent by Mr. McLachlin, not the purported "final" 3/16 Draft. Finally, Plaintiffs did not merely accept all revisions in the 3/17 Draft, but made substantial alternations. Even the language used by Mr. Weinstock demonstrates there is no agreement: "if you commit to raise the payment to $550,000, we will accept the inventory as is despite the shortfall—let's get this done!" Exhibit D. In other words, Plaintiffs' acceptance was conditioned on BGIS agreeing to increasing the settlement payment—this is expressly not an acceptance. On March 30, 2023, Plaintiffs were obviously still negotiating.

### F. BGIS Rejected Plaintiffs' Counteroffer and Withdrew All Settlement Offers.

In response to the March 30, 2023 e-mail and counteroffer, Mr. McLachlin, rejected the counteroffer and withdrew any pending settlement offers:

> From: Andrew McLachlin <Andrew.McLachlin@bgis.com>
> Sent: Monday, April 3, 2023 5:41 PM
> To: Weinstock, Jeffrey <Jeff.weinstock@lewisbrisbois.com>
> Cc: Michael Pascoe <mpascoe@hahnlaw.com>; Robert Port <rport@hahnlaw.com>; Platner, Michael <Michael.Platner@lewisbrisbois.com>; Joyce, Ken <Ken.Joyce@lewisbrisbois.com>; Haft, David <David.Haft@lewisbrisbois.com>; Brian Fellows <Brian.Fellows@bgis.com>
> Subject: [EXTERNAL] RE: CONFIDENTIAL - APT-BGIS Settlement Agreement
>
> Jeffrey – These revisions are not acceptable. It's clear that we're too far apart and don't agree. We need to move on from this.
> Mike Pascoe has instructions of today to re-start the litigation process.
> We will look to the parties engaging Marcum LLP to resolve the Working Capital, as per the court order.
> To clarify, all offers to settle are withdrawn.
>
> Regards,
> Andrew

Exhibit Q at p. 4. Thus, in response to the counteroffer, BGIS: (1) communicated its rejection of the counteroffer; (2) informed Plaintiffs that BGIS was re-starting the litigation process *that day*; and (3) withdrew all previous settlement offers.

8

14534333.4

G. **Plaintiffs' Behavior Immediately After BGIS's Rejection of the Counteroffer Confirms There was No Agreement.**

In response to BGIS's rejection of Plaintiffs' counteroffer, Plaintiffs' counsel did not cry foul and argue there was an agreement. They did not claim there was a meeting of the minds. Instead, Plaintiffs tried to continue negotiating. First, Plaintiffs' counsel asked for a phone call stating that they "need to know what you want to sign," to which BGIS responded that they "won't be signing." April 3, 2023 e-mail string from Michael Platner, attached as Exhibit Q at pp. 3-4. Second, in response, Plaintiffs' counsel admitted there was "an ambiguity around the inventory" and lamented that the parties had spent many hours attempting to document the agreement. *Id*. at pp. 2-3. In response, BGIS stated that Plaintiffs' changes "kept getting farther apart" from what was agreed to, and that BGIS agreed to some of Plaintiffs' changes "in the spirit of resolution" but that they would not agree to Plaintiffs most recent counteroffer. *Id.* at p.2 In response Plaintiffs' counsel sent the following:

> i'm sorry andrew the best I can tell is the only debate was over the inventory and I thought that you and Jeff discussed it and he would not have put in the extra 50,000 unless there was some sense that that was a reasonable thing to consider considering the unavailability of a way to compare the list, but I don't really think it's at all in the agenda of the parties to let that be the cause of the lack of confirmation of the documentation of the settlement. I'll get the client to accept the inventory as is let's get this done I can't stand the idea of having wasted all this effort, and then still being in litigation , I think we've worked as well as we can together under the circumstances. Let's get it done. I am sorry that you found this is difficult process but remember for our clients. It was their life's work of 25 years and I think we finally did some good together when we met, I don't think there was anything else objectionable if there was let me know and let's just finish this it's not only about a gentle minutes for all the right reasons that's why we settled this together to begin with so please reconsider and of course I'm making it clear to yua that we will go back to the last draft and call it a day .

*Id*. at p.1 [*sic* (as to all typos)] (highlighting added). While the response is difficult to understand, one important note stands out: Plaintiffs' counsel notes that he would "get the client to accept the inventory as is" and that he did not think "there was anything else objectionable," but that if there

9

was, "let me know and let's just finish this." *Id*. The e-mail from Plaintiffs' counsel is an acknowledgment that, as of April 3, 2023, there was not a meeting of the minds between the parties nor was there an acceptance by Plaintiffs.

### H. Plaintiffs Abruptly Change Course and Attempt to Force a Settlement But Cannot Ignore That There was Never an Agreement.

After acknowledging that the parties were still negotiating and that they would need to get their clients' approval, Plaintiffs' counsel then changed course and attempted to argue that there was an enforceable settlement agreement. *See* April 4, 2023 e-mail string between Andrew McLachlin and counsel for Plaintiffs, attached as Exhibit P. Rather than stick with their 3/30 counteroffer, Plaintiffs' counsel attempted to rewind the clock—not to the 3/16 Draft that they now contend is the enforceable settlement—but to the 3/17 Draft, which they contemporaneously admitted was materially different. *Id*. ("March 17th … version … is attached"). In response BGIS noted that "[e]very offer that had been made did not get accepted," and that on top of that, "each offer was then rejected by the other party's counteroffer." *Id*. BGIS then listed several key issues on which there was ***no agreement***: (1) the settlement payment, (2) whether the Asset Purchase Agreement ("APA") would continue or be terminated, and (3) the survival of restrictive covenants. *Id*.

Every draft of the settlement agreement throughout the settlement negotiation process was met with a substantially revised redlined version. In short, there is no single proposed draft agreement that any party can identify, where the material terms were proposed by one party and accepted by the other party. If there were, Plaintiffs would have attached it to the Motion. They did not.

In order to assist the Court in reviewing the extensive recitation of events, BGIS has included a detailed timeline table as Exhibit R.

10

14534333.4

### III.  LAW AND ARGUMENT

Plaintiffs argue that they can go back to a previous draft settlement agreement that they rejected, and retroactively accept it, even after it has been withdrawn. That is not the law.

#### A.  Any Response to a Settlement Offer That is Not a Mirror Image and Unconditional Acceptance is a Rejection and a Counteroffer.

Settlement agreements are governed by contract law. *Gira v. Wolfe*, 115 So.3d 414, 417 (Fla. 2d DCA 2013); *Schlosser v. Perez*, 832 So.2d 179, 182 (Fla. 2d DCA 2002). It is a "hornbook tenet of contract law" that there must be "symmetry […] between an offer and an acceptance to establish an enforceable agreement." *Pena v. Fox*, 198 So. 3d 61, 62 (Fla. Dist. Ct. App. 2015). "Florida law further requires that 'an acceptance of an offer must be absolute and unconditional, identical with the terms of the offer.'" *Id.* citing *Ribich v. Evergreen Sales & Serv., Inc.*, 784 So.2d 1201, 1202 (Fla. 2d DCA 2001); *see also Sullivan v. Econ. Research Props.*, 455 So.2d 630, 631 (Fla. 5th DCA 1984)). The acceptance "must be a 'mirror image' of the offer in all material respects, or else it will be considered a counteroffer that rejects the original offer." *See, e.g., Trout v. Apicella*, 78 So.3d 681, 684–85 (Fla. 5th DCA 2012) (applying mirror image rule to hold that insurer's proposed release of all claims rejected plaintiff's offer, which was limited to release of bodily injury claims); *Peraza v. Robles*, 983 So.2d 1189, 1189 (Fla. 3d DCA 2008) (determining that insurer's inclusion of a proposed hold harmless agreement and subrogation waiver release "constituted a separate additional requirement that conditioned the settlement on the submission of the requested documents," which acted as a counteroffer and rejection of plaintiff's original settlement offer). An attempted acceptance can become a counteroffer "either by adding additional terms or not meeting the terms of the original offer." *Grant v. Lyons*, 17 So.3d 708, 711 (Fla. 4th DCA 2009).

#### B.  Even if Mr. Port's 3/16 Draft were a Final Settlement Offer—it was not— Plaintiffs Rejected it.

11

14534333.4

As set forth above, Mr. Port's March 16, 2023 e-mail explicitly noted that the attached 3/16 Draft was a "preliminary copy" and was still pending client review.[2] Thus, by its terms, it was not a settlement offer. Furthermore, it appears that Plaintiffs' counsel never even showed the 3/16 Draft to Plaintiffs. *See* Exhibit M ("we want to make sure that we know which is the version [3/16 Draft or 3/17 Draft] that you would like us to discuss with our client"). But even assuming Plaintiffs' contentions are correct, Plaintiffs rejected the offer through their counteroffer.

Plaintiffs mischaracterize the 3/17 Draft from Mr. McLachlin as simply constituting "preferred language" but still being an agreement on all material terms. [Dkt. No. 51 at ¶ 10.] As demonstrated above, and as Plaintiffs' counsel admits, it was "very different." Exh. M at p.1. Because the 3/17 Draft was the operative offer from BGIS, in order to determine if there is an enforceable agreement, the Court must look for a "mirror image" acceptance. The Court will not find it. Instead, the Court will see redlines from Plaintffs' counsel that, among other changes: (1) conditions acceptance on BGIS's agreement to ***increase the settlement payment*** by $50,000; (2) states that the APA is terminated, rather than surviving the settlement, (3) requires BGIS to mischaracterize the nature of the settlement payment for tax purposes, and (4) requires that portions of the APA be deleted. *See* Exhibit D at pp. 1 (3/30/23 Weinstock email), 7-13 (3/30 Draft).

There are numerous other additional changes that are not mirror images of BGIS's 3/17 Draft. For instance, Plaintiffs changed the scope of the releases to include releasing all claims arising out of or in connections with (1) the APA, (2) the "Affiliate Agreements," and (3) the entire asset purchase "Transaction." *Id*. (3/30 Draft at p. 6 (¶ 15 redlines)). This, by itself, is enough to

---

[2] Plaintiffs repeatedly note that Joint Motion #2 represented there was an agreement as to all material terms. This representation was simply incorrect, and should never have been included by Plaintiffs' counsel, who drafted the document in its entirety. This error became obvious the next day when BGIS's in-house counsel sent the revised 3/17 Draft.

show there is no settlement. *See Villareal v. Eres*, 128 So.3d 93, 100 (Fla. 2d DCA 2013) (holding that no settlement agreement where proposed releases deviated from settlement offer's terms, noting "[i]t is the presence of the language in the proposed releases, not the effectiveness of the terms themselves, that [did] not comply with the offer"). Thus, because Plaintiffs did not unequivocally accept a mirror image of BGIS's settlement offer, Plaintiffs' response is "a counteroffer and rejection of [BGIS's] original settlement offer." *Peraza v. Robles*, 983 So.2d at 1189.

### C. Even if Plaintiffs' Response Was Not a Counteroffer and Rejection, BGIS Affirmatively Withdrew the Purported Settlement Offer Before Plaintiffs Accepted It.

Even assuming, *arguendo*, that Plaintiffs were not continuing to negotiate, but simply were making inquiries into certain portions of the 3/16 Draft or 3/17 Draft, there still is no settlement agreement. It is axiomatic that "an offer may be withdrawn at any time before acceptance. Once revoked, a party has no power to accept a revoked offer." *GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc.*, 51 So. 3d 1243, 1245 (Fla. Dist. Ct. App. 2011), *citing Sullivan v. Econ. Research Props.*, 455 So.2d 630, 631 (Fla. 5th DCA 1984). For acceptance to be effective, it "must be communicated to the offeror and the offeror can revoke the offer provided the communication of such revocation is received prior to the acceptance." *Kendel v. Pontious*, 261 So. 2d 167, 170 (Fla. 1972). Thus, even if the 3/16 Draft or the 3/17 Draft constituted an offer that remained open after Plaintiffs' 3/30 Draft counteroffer, BGIS revoked all offers on April 3, 2023 at 5:40 pm. *See* Exhibit Q at p. 4. Plaintiffs never communicated an acceptance of either of those offers prior to their revocation, and Plaintiffs' April 4, 2023 attempt to retroactively accept the offers is legally irrelevant.

## IV. CONCLUSION

A review of the redlines that the parties exchanged at every turn in the negotiation confirms that there was never a settlement agreement in this case. Equally instructive is the fact that

13

14534333.4

Plaintiffs' Motion did not attach any documents, including the document they seek to enforce, with an accompanying communication showing its acceptance. Florida law requires an unequivocal mirror image acceptance of an offer for there to be an enforceable agreement. That did not happen in this case. For these reasons, the Court should deny Plaintiffs' Motion to Enforce Settlement Agreement.

Respectfully Submitted,

HAHN LOESER & PARKS LLP
5811 Pelican Bay Boulevard, Suite 650
Naples, Florida 34108
Phone: (239) 254-2900
Fax: (239) 254-2947

200 Public Square, Suite 2800
Cleveland, Ohio 44114
Phone: (216) 621-0150
Fax: (216) 241-2824

By:   */s/ Allison B. Christensen*
ALLISON B. CHRISTENSEN, ESQ.
Florida Bar No. 103515
PHOEBE S. WISE, ESQ.
Florida Bar No. 105652
MICHAEL B. PASCOE , ESQ.*(pro hac vice)*
Ohio Bar No. 0080899
*mpascoe@hahnlaw.com*
*Attorneys for Defendant BGIS Global*
*Integrated Solutions US, LLC*

14534333.4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on 20th day of April, 2023, a true and correct copy of the foregoing OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR EXTENSION OF TIME was filed via the CM/ECF system, which will serve a true and correct copy of the same to all attorneys of record.

Lewis Brisbois Bisgaard & Smith LLP
Kenneth J. Joyce, Esq.
Florida Bar No. 986488
David M. Robbins, Esq.
Florida Bar No. 1012340
110 Southeast Sixth Street, Suite 2600
Fort Lauderdale, Florida 33301
Telephone: (954)728-1280
Facsimile: (954)678-4090
E-service: ftlemaildesig@lewisbrisbois.com
Ken.joyce@lewisbrisbois.com
David.robins@lewisbrisbois.com
Linfa.yum@lewisbrisbois.com
Kimberly.lowery@lewisbrisbois.com
*Attorneys for Plaintiffs*

                                          By: */s/ Allison B. Christensen*
                                                ALLISON B. CHRISTENSEN, ESQ.

14534333.4