IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 22-61477-CIV-SINGHAL/VALLE

DEVIN GRANDIS,

                Plaintiff,

v.

BGIS GLOBAL INTEGRATED SOLUTIONS US LLC,

                Defendant.

_____/

**PLAINTIFF'S CORRECTED[1] MOTION FOR PARTIAL SUMMARY
JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW**

---

[1] Plaintiff, with leave of Court (DE 132), files this Corrected Motion for Partial Summary Judgment in compliance with the Court's practices and Local Rules.

Plaintiff, Devin Grandis ("Grandis"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D.L.R. 56.1, hereby files this Motion for Partial Summary Judgment against Defendant, BGIS Global Integrated Solutions US LLC ("BGIS").

## I.    INTRODUCTION

This case arises out of BGIS's failure to pay in excess of $900,000 in contractually-required severance to Grandis based on an unsupportable theory that a few, one-off, off-color jokes or comments made by Grandis somehow caused material injury to BGIS or otherwise justified his for-cause termination. There is no genuine dispute as to any material issue, even assuming Grandis said every comment or joke that BGIS alleges, that this conduct did not constitute "Cause" as narrowly defined in the employment contract and that BGIS suffered no material injury.

On December 23, 2021, BGIS, as purchaser, entered into an Asset Purchase Agreement ("APA") with Advanced Power Technologies, LLC ("APT"), as seller, and Grandis, as founder. One benefit Grandis obtained under the APA was a three-year "no cut" employment contract (the "Employment Contract"). The Employment Contract required that BGIS pay Grandis an annual base salary not less than $300,000 and severance equal to the remaining base salary due under the Employment Contract, unless Grandis was terminated for "Cause" – a narrowly-defined exception.

On April 7, 2022, BGIS terminated Grandis's employment purportedly for cause, only three months after the APA closing. While the deal contemplated that APT receive up to $15 million and Grandis receive at least $900,000, BGIS never paid this consideration. Instead, Grandis received only approximately three months of salary after the closing, and BGIS terminated his employment, refusing to pay the contractually-required severance. For the reasons explained below, Grandis is entitled to partial summary judgment on his severance claim that BGIS was obligated to pay.

## II.   ARGUMENT AND AUTHORITY

### A. Standard of Review

As this Court held in *Graves v. Brandstar Studios, Inc.*, No. 20-60666-CIV-SINGHAL, 2021 WL 4988310, at *3 (S.D. Fla. 2021), *aff'd*, 67 F.4th 1117 (11th Circ. 2023):Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact [*7] and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)); *see also Alabama v. North Carolina*, 560 U.S. 330, 344, 130 S. Ct. 2295, 176 L. Ed. 2d 1070 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### B. Grandis Is Entitled to the Severance Benefit as a Matter of Law Based upon the Clear and Unambiguous Terms of the Employment Contract.

#### i.   BGIS Breached the Employment Contract.

In Florida, a breach of contract action exists for non-adherence to a "for cause" requirement in an employment contract. *See, e.g.*, *Olsen v. Allstate Ins. Co.,* 759 F. Supp. 782, 786 (M.D. Fla.

1991) (granting summary judgment and finding handbook to be neither legally relevant nor sufficient to change employment contract); *see also generally Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (elements of breach of contract are (1) a valid contract; (2) a material breach; and (3) damages). There is no genuine dispute as to any material fact that (1) the Employment Contract is a valid contract that required BGIS to pay Grandis severance if it terminated Grandis prior to December 31, 2024 "without Cause"; (2) BGIS materially breached the Employment Contract by failing to pay Grandis severance after BGIS terminated him for misconduct that as a matter of law does not constitute "cause" as that term is narrowly defined in the Employment Contract; and (3) Grandis suffered damages.

BGIS admits it entered into the Employment Contract with Grandis to serve as a Senior Vice President and General Manager, with a base salary of $300,000, for an initial period from January 1, 2022 to December 31, 2024, with the potential to earn a bonus. DE 46 (Answer), ¶¶21, 45. BGIS further admits the Employment Contract "speaks for itself" on the significance of terminating Grandis with or without cause. *Id.*, ¶23; BGIS Response to RFA No. 23 (admitting that "Cause" in the Employment Contract is "plain[ly] and clear[ly] defined in the Employment Contract). In short, there is no allegation by either party that the severance benefit is ambiguous.

### ii. BGIS's Ineffective Termination Letter

In the Termination Letter, BGIS alleges only that Grandis "materially failed to perform [his] duties and responsibilities, committed acts of dishonesty, and committed other intentional misconduct that results in material injury to BGIS." Thus, there is no dispute that BGIS did not purport to terminate Grandis for fraud or embezzlement, nor is there any record evidence of it. *Id.* Nor does the Termination Letter specifically allege that Grandis failed to cooperate with BGIS in any investigation. *Id.* In any event, BGIS's head of HR and 30(b)(6) representative both admitted

that there is no evidence of Grandis interfering or failing to cooperate with any investigation. SOMF, ¶31. To the extent BGIS contends that it terminated Grandis for failure to do so, BGIS was required to provide Grandis with 30 days to cure from delivery of written notice of his failure to cooperate, which BGIS failed to do. SOMF, ¶39.

Thus, BGIS's termination is based on either (1) an unspecified and generic purported material failure to perform duties and responsibilities under subsection (i), which is subject to the contractual right to cure; or (2) unspecified purported acts of dishonesty or intentional misconduct that purportedly resulted in material injury to BGIS. Even assuming that Grandis actually said each alleged comment, this conduct, individually or collectively, does not constitute "Cause," as narrowly defined under the Employment Contract. There is no genuine dispute that no "Cause" existed, and any purported determination otherwise was neither in good faith nor reasonable.

### iii. BGIS Cannot Re-Write its Employment Contract to Include Off-Color Comments, Jokes, or Unprofessionalism as a Material Failure to Perform Duties and Responsibilities.

Other than cooperating with BGIS in any investigation or formal proceeding, keeping confidential and proprietary information confidential, and cooperating and providing assistance with respect to patent applications, the Employment Contract does not set forth any other duties and responsibilities to BGIS. SOMF, Exh. E. BGIS is a multi-billion dollar company and is a sophisticated party. BGIS has more than 10,000 employees, and therefore presumably has been involved in many employment and other related contracts. SOMF, ¶¶ 3, 9.

 "A sophisticated party to a contract has the burden of ensuring that the contract specifically covers and provides for each of his expectations." *Lowe's Home Centers, Inc. v. Fryman*, 2007 WL 2364213, at *6 (S.D. Fla. Aug. 15, 2007), *aff'd*, 390 Fed. Appx. 883 (11th Cir. 2010). If BGIS's expectation was to be able to escape its contractual severance obligation in the event Grandis told

jokes or offended someone, then BGIS should have specifically negotiated and contracted for this right. *Id.*; *see also Leigh v. Amica Mut. Ins. Co.*, 2020 WL 758146, at *2 (M.D. Fla. Feb. 14, 2020) (finding party was sophisticated and certainly knew how to write contracts, and if it wanted to exclude coverage for the matter at issue, "it could have easily done so in a very clear and concise manner" but "did not choose to include provisions dealing with the factual scenario presented here"). BGIS chose not to include provisions dealing with the factual scenario presented here and cannot now re-write its contract to avoid paying severance to Grandis. *Id.*

It is well-settled that where contract terms are unambiguous, the parties' intent must be determined from within the four corners of the document. *Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1194–95 (Fla. 4th DCA 2000) (reversing judgment and directing court to enter judgment in employee's favor, as contract provided he was entitled to severance upon termination). It is never the trial court's role to rewrite a contract to make it more reasonable for a party or to relieve a party from a bad bargain. *Id.* at 1195. Parties are free to contract, even when one side negotiates a harsh bargain. *Id.* (finding that if employer wanted to pay severance only when employee was terminated without cause, it could have made it a requirement in contract).

Florida law recognizes the "doctrine of *expressio unius est exclusio alterius*," which "instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded." *Am. Univ. of the Caribbean v. Caritas Healthcare, Inc.*, 441 Fed. Appx. 644, 646 (11th Cir. 2011) (finding fees provision in contract was inapplicable as to certain parties because, if parties intended it to apply, it would have been expressly stated). Similarly, in Florida "[a]n important canon is that of *ejusdem generis*, which states that when a general phrase follows a list of specifics, the general phrase will be interpreted only to include items of the same type as those listed." *State v. Weeks*, 202 So. 3d 1, 8 (Fla. 2016). "Distilled to its

essence, this rule provides that where general words follow an enumeration of specific words, the general words are construed as applying to the same kind or class as those that are specifically mentioned." *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1088–89 (Fla. 2005). The canon *noscitur a sociis* is related and instructs that "a word is known by the company it keeps." *Nehme v. Smithkline Beecham Clinical Labs., Inc.*, 863 So. 2d 201, 205 (Fla. 2003); F.*W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1358 (S.D. Fla. 2007) *aff'd*, 308 F. App'x 389 (11th Cir. 2009) ("The ancient maxim *noscitur a sociis* is a cannon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it . . . in order to avoid the giving of unintended breadth to contract provisions").

Here, the only specific words mentioned in the Employment Contract with respect to a material failure to perform duties and responsibilities is "a failure to cooperate with BGIS in any investigation or formal proceeding." Nowhere is it stated in the "Cause" definition or Employment Contract, nor can it now be added or inferred, that making off-color remarks or jokes could constitute a *material* failure to perform duties and responsibilities. *Id.* Nor does the Employment Agreement provide that any purported breach of the APA or any BGIS policy or procedure constituted "Cause." Under these well-settled canons of contract construction, BGIS cannot re-write the Employment Contract to include a "catch-all" for any conduct it unilaterally deems offensive or unprofessional—giving unintended breadth to the narrowly defined severance provision, especially where BGIS drafted the Employment Contract on its own letterhead. *Id; see also Hammaker v. Brown & Brown, Inc.,* 214 F. Supp. 2d 575, 577 (E.D. Va. 2002) ("Under Florida rules of construction, the Employment Agreement must be construed against its drafter"). For example, BGIS's Handbook prohibits smoking electronic cigarettes in BGIS offices and vehicles. SOMF, Exh. N, p.19. Could BGIS have terminated Grandis for cause if he vaped in a

company car? BGIS's Handbook also "as a general rule" requires "business casual attire." SOMF, Exh. N, p.19. Could BGIS have terminated Grandis for cause if he wore a t-shirt or "torn, ripped or faded jeans"? *Id*. No, because such violations of company policy are obviously not *material*.

The term "material" must be given significance. A material breach occurs when a party "fail[s] to perform a *duty* that goes to the essence of the contract." *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015). The Employment Agreement is silent on any code of professionalism or conduct. Making a few off-color jokes or comments does not go to the essence of any of Grandis's duties under the Employment Contract. Indeed, BGIS admits that, on 4/7/22, the date of Grandis's termination, Grandis had not materially failed to perform any of his duties or responsibilities. SOMF, ¶42. Further, when BGIS's head of HR was asked if it was his understanding that BGIS's position that Grandis shirked responsibilities or duties, he responded "Not to the best of my knowledge." SOMF, ¶38.

### iv.   BGIS failed to Provide Grandis with a Full Opportunity to Cure.

The Employment Contract provides Grandis with 30 days to cure any claimed material failure to perform duties. There is no genuine dispute that BGIS failed to provide Grandis with a full 30-day cure period. BGIS provided its Warning Letter to Grandis after 5:00 p.m. on March 7, 2022. SOMF, ¶17 & Exh. M. With respect to cure, BGIS, in the fourth paragraph, referred Grandis solely to the Harassment Sections, and required him to complete on-line learning courses. *Id.* Thus, Grandis understood that his contractual obligation to cure was limited to reviewing the Harassment Sections and completing the courses, both of which Grandis promptly did. SOMF, ¶20.

BGIS admits that it failed to provide Grandis with the Handbook before it provided Grandis with the Warning Letter. In fact, BGIS did not provide the Handbook to Grandis until 4:26 PM on

Friday, March 11, 2022. SOMF, ¶19(b).[2] BGIS further admits that it did not expect Grandis to be familiar with the Handbook or the Code of Business Conduct and Ethics of BGIS (the "Code") prior to March 11, 2022. SOMF, ¶19(f). Moreover, BGIS never provided the online training to Grandis before the Warning Letter, and did not make the training available to Grandis until March 23, after Grandis requested it after having not received it. SOMF, ¶¶19(e)-(g). In response to Grandis's request for admission that at no time after March 14, 2022 did Grandis violate the Handbook or the Code, BGIS states "BGIS has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this RFA." SOMF, ¶¶39, 41 and 42.

Grandis completed all training required of him by no later than March 29, 2022. SOMF, ¶20. Yet, the very next day, on March 30, 2022, BGIS delivered to Grandis the Suspension Letter, notifying him that "effective immediately, you are being placed on a paid suspension pending an internal investigation." SOMF, ¶30. In the Suspension Letter, BGIS further directed Grandis to "vacate the office" and to refrain from contacting anyone affiliated with BGIS until the investigation was complete, warning him that "[f]ailure to abide by these instructions will constitute a failure to cooperate in an investigation and will be grounds for termination for "Cause" in accordance with your employment agreement." *Id.*

Accordingly, despite the 30-day cure requirement, BGIS suspended Grandis, without explanation, only one day after he completed the training—the second curative action it directed him to take—and two weeks after he read the Harassment Sections—the first curative action it directed him to take—and specifically prohibited him from taking any further action to cure. *See*

---

[2] Nonetheless, in an email where Shory acknowledged Grandis was leaving town that day for an out of town trade show, that he would send Grandis the training next week (which he failed to do), and that Grandis should enjoy his time off during the next week. *Id.*

*Magnum Constr. Mgmt. Corp. v. City of Miami Beach*, 209 So. 3d 51, 55 (Fla. 3d DCA 2016) (obligation fell on City to insure that contract provisions, which provided opportunity to cure, were fully honored, and City's actions frustrated these provisions that were intended to prevent litigation between the parties) (*citing N. Am. Van Lines v. Collyer,* 616 So.2d 177, 179 (Fla. 5th DCA 1993) (stating that "a party who, by his own acts, prevents performance of a contract provision cannot take advantage of his own wrong"). BGIS terminated Grandis only eight days after suspending him; only 15 days after BGIS provided Grandis with access to the courses and only nine days after he completed them; only 24 days after the trade show; and only 27 after BGIS provided the Handbook to Grandis. No matter which of these dates constitutes commencement of the cure period, BGIS indisputably failed to provide Grandis with a full 30-day opportunity to cure. *Id.; see also* SOMF, ¶43 (testifying "it'd be close" as to whether Grandis was given a full 30 days). There is no dispute BGIS never provided Grandis with written notice and an opportunity to cure regarding any alleged financial improprieties. SOMF, ¶¶39-40.

If a party does not comply with the requirements of the contract's default clause, it forfeits its rights under the clause. *In re Colony Square Co.,* 843 F.2d 479, 481 (11th Cir. 1988). Accordingly, when a default clause contains a notice provision, it must be strictly followed, and summary judgment is warranted if notice is not given. *Id.*; *see also All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895 (11th Cir. 2000) (even if party had materially breached employment contract, breach did not excuse other party's failure to comply with non-competition provision because that party failed to give requisite notice and opportunity to cure the breach). Furthermore, for any notice given under the APA, BGIS was required to send a copy to Grandis's counsel. Indisputably, BGIS failed to comply with this notice provision. SOMF, ¶¶18 and 30(b); *See* APA, ¶11.1; *All Metals*, 222 F.3d 895 (notice that employee considered employer in breach of

employment agreement, orally and in writing, was insufficient to satisfy notice provision, which required written notice to be sent in particular manner to particular location).

**v.       BGIS Has Admitted that Grandis's Conduct Did not Result in Material Injury to BGIS.**

BGIS has admitted that it suffered no material injury as a result of Grandis's conduct. SOMF, ¶¶14, 16, 31(i), 34, 37, 38, 39, 40. There is no genuine dispute as to any material fact that Grandis did not commit any act of fraud, embezzlement, dishonesty, or any other intentional misconduct. *See infra*, section vi. Even if, *arguendo*, BGIS could provide some record evidence of such misconduct—BGIS has not and cannot—there is no genuine dispute as to any material fact that any such conduct failed to result in material injury to BGIS. *Id.*

**vi.      There is No Evidence of Grandis Committing Any Act of Dishonesty or Intentional Misconduct.**

BGIS has provided no evidence of any act of dishonesty or intentional misconduct committed by Grandis. The closest BGIS comes to purporting to raise a potential act of dishonesty or intentional misconduct—although not mentioned anywhere in BGIS's Warning Letter, Suspension Letter, or Termination Letter—concerns a transaction between APT and Linmore. BGIS's allegations of misappropriation and self-dealing are baseless and neutralized by the actual record evidence. SOMF, ¶¶ 34 and 39. Indeed, when BGIS's head of HR was asked if it was his understanding that BGIS considers Grandis to have committed intentional misconduct that resulted in material injury to BGIS, he replied "I don't know the answer." SOMF, ¶ 38.

Moreover, BGIS does not define the term "dishonesty" or "intentional misconduct" in the Employment Contract. However, under their plain meaning and contract construction canons, cited *supra* at pp. 5-6, no plausible argument can be made that off-color jokes or comments constituted dishonesty or intentional misconduct. *See, e.g. The Florida Bar v. Pettie*, 424 So. 2d 734, 737 (Fla.

10

1982) ("Dishonesty" is defined as "disposition to lie, cheat or defraud; untrustworthiness; lack of integrity") (citing Black's Law Dictionary 421 (5th ed. 1979)); *Doe v. Celebrity Cruises, Inc.,* 389 F. Supp. 3d 1109, 1115 (S.D. Fla. 2019) ("To demonstrate 'intentional misconduct,' a plaintiff must show that 'the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage"). "The Eleventh Circuit has described instances of intentional misconduct as '**very rare**.'" *Id.* (emphasis added).

To the extent BGIS intended dishonesty or intentional misconduct to include off-color jokes or comments, BGIS should have expressly stated same in its contract. Under the well-settled contract construction principles, including *ejusdem generis*, *expressio unius est exclusio alterius*, and *noscitur a sociis*, *see supra* at pp. 5-6, the Court must look at dishonesty and intentional misconduct "by the company they keep," which is fraud and embezzlement. No reasonable interpretation of this provision includes unprofessionalism, vulgarity, or off-color jokes or comments, and any such interpretation would require the Court to re-write the contract.

### vii. BGIS Cannot Rely on its Handbook to Terminate Grandis because BGIS provided it to him After-the-Fact.

The Warning Letter, referencing the Handbook (as setting forth "established guidelines" for "job performance expectations") states that it is a final warning letter. However, despite BGIS's reliance on the Handbook guidelines to inform Grandis he was being given a "final warning," BGIS never sent the Handbook to Grandis until March 11, 2022. SOMF, ¶¶19(b) and (f). Moreover, BGIS knew when it sent the Warning Letter that it had never provided Grandis with the Handbook or the Code. *Id.* BGIS further admits that it did not expect Grandis to be familiar with the Handbook or the Code prior to March 11, 2022. *Id.* Last, in response to Grandis's request for an admission that at no time after March 14, 2022 did Grandis violate the Handbook or the

Code, BGIS states, "BGIS has made a reasonable inquiry and the information it knows or can readily obtain is insufficient to enable it to admit or deny this RFA." SOMF, ¶42.

Accordingly, any reliance by BGIS on its Handbook to support Grandis's termination is improper. In addition to BGIS's own admissions, a company policy or handbook does not become a contractual right or duty absent some specific showing of "mutual agreement." *Casequin v. CAT 5 Contracting, Inc.*, 2:18-CV-588-JLB-MRM, 2021 WL 3471627, at *8, n.9 (M.D. Fla. Aug. 6, 2021), *clarified on denial of reconsideration*, 2021 WL 4748727 (M.D. Fla. Oct. 12, 2021); *see also Carlucci v. Demings,* 31 So. 3d 245, 247 (Fla. 5th DCA 2010) ("It is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract").

Here, it is undisputed that there was no explicit mutual agreement between Grandis and BGIS for the Handbook to create any contractual obligation or rights, let alone modify or supplement the Employment Contract. Indeed, the Handbook: (1) is not referenced in the Employment Contract; (2) was not provided to Grandis contemporaneously with execution of the Employment Contract or even the commencement of his employment; (3) expressly states that "[t]his handbook should not be construed as an express or implied employment contract" and "[n]othing in this handbook, nor anything that is said or written should be construed as a promise of permanent employment, of employment for any particular length of time, of discharge only for cause, or of a right to any particular disciplinary action or discharge procedures"; (4) was not provided to Grandis until March 11, 2022 after Grandis had received a final warning based on the Handbook; and (5) permitted BGIS to unilaterally "depart from and/or modify these policies." SOMF, Exh. N, pp. 6 and 57. Moreover, BGIS admits that the Employment Contract was never

modified nor terminated. SOMF, ¶10. Further, BGIS admits that the Warning Letter "does not expressly assert that Grandis violated the Harassment Free Workplace sections in the BGIS Team Member Handbook." SOMF, ¶18(a).

Accordingly, BGIS has no enforceable contract right under the Handbook, and cannot use the Handbook to modify the language it drafted in its own Employment Contract. *Id.*; *see also Carlucci v. Demings*, 31 So. 3d 245, 247 (Fla. 5th DCA 2010) (unilateral act of implementing an internal policy that was subject to unilateral amendment or cancellation cannot constitute a contract). In *Olsen v. Allstate Insurance Co.*, 759 F.Supp. 782 (M.D.Fla.1991), summary judgment was granted, rejecting a party's argument that contents of employment manual were incorporated by reference into terms of written employment contract. The Court stated "that the allegations concerning the existence and effect of handbooks, procedure manuals, etc., are neither legally relevant nor sufficient to change the contract from one of termination at will unless the plaintiff can assert a particular provision of the contract itself which converts the term." *Id.* at 787. Similarly, here, the Handbook is neither legally relevant nor can it be used to change or expand the terms of the Employment Contract or justify BGIS's improper termination of Grandis.

> **viii.  Unprofessionalism, Vulgarity, Jokes, or Purported Violation of BGIS's Handbook Does not Constitute Cause under the Employment Contract or Sexual Harassment or a Hostile Workplace Under Title VII.**

Even if the Handbook were applicable—it is not—BGIS's allegations against Grandis of unprofessionalism, vulgarity, or making off-color jokes, whether a purported violation of the Handbook or not, do not amount to "Cause" under the Employment Contract. Indeed, the Harassment Sections that BGIS directed Grandis to review essentially track the letter and spirit of Title VII to discourage sexual harassment or a hostile workplace. Thus, case law interpreting Title VII is instructive. The U.S. Supreme Court has repeatedly emphasized that simple teasing, offhand

comments, and isolated incidents do not amount to sexual harassment or create an actionable hostile work environment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* . . . because of . . . sex." *Id.* ("We have never held that workplace harassment, … is automatically discrimination because of sex merely because the words used have sexual content or connotations. The critical issue … is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* Title VII does not make actionable conduct that is "merely offensive." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "'[M]ere utterance of an . . . epithet which engenders offensive feelings in a employee," does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.* "Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21-22.

Indeed, it is well-settled that Title VII is not a "general civility code" and does not regulate mere offensive utterances or general vulgarity. *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 296 (11th Cir. 2012); *Estevez v. Berkeley Coll.*, 2021 WL 3115452, at *16 (S.D.N.Y. July 19, 2021), *aff'd*, 2022 WL 16843460 (2d Cir. Nov. 10, 2022) (employee's comment there was "too much estrogen", even if made more than 30 times, "too mild and innocuous to create a hostile work environment . . . [the] schtick was unfunny and distasteful, but it is the sort of conduct ordinarily greeted with eyerolls or snappy comebacks. It was not sufficiently severe or pervasive to create an abusive working environment"); *Howard v. City of Robertsdale*, 168 Fed. Appx. 883,

889-90 (11th Cir. 2006) (mere "sex talk" does not rise to level of severe and pervasive harassment); *Howard v. Sunniland Corp.*, 2016 WL 6524394, at *3 (M.D. Fla. Nov. 3, 2016) (pattern of rude and insensitive remarks are insufficient to establish a hostile work environment).

None of Grandis's alleged conduct or comments were severe or pervasive. Indeed, all of his comments were "one-offs" heard by different people. The "camping" joke, even if "unfunny and distasteful," did not create a hostile work environment. *Id.* Ms. Sakoff testified she did not want or expect her relationship with Grandis to change, and did not want Grandis to be terminated. SOMF, ¶28. The "swallows" quip was not directed to, nor heard by, the female employee about whom the quip was made, and therefore as a matter of law could not be subjectively or objectively perceived by that employee to be abusive. SOMF, ¶14. Similarly, the use of "chicks," stated in passing to another man, was trivial and could not be subjectively or objectively perceived to be abusive. *Id.; see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (co-worker calling women "chickies" was "too trivial to contribute to a Title VII hostile work environment claim"). Similarly, as Sakoff did not hear the "bending over" comment, it could not be subjectively or objectively perceived to be abusive. SOMF, ¶26. Nor can the "balls" or "mermaid" comments be construed as Cause. SOMF, ¶¶15-16; *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 352 (6th Cir. 2020). (no Title VII liability because football coach's comments were not sexual or motivated by general hostility, and he did not treat male and female students differently; to coach, a "pussy" was a wimp or coward, and comments were about football, not gender roles). Similarly, any allegation of profanity used by Grandis in a business or even joking context is insufficient as a matter of law. *See Murphy v. City of Aventura*, 383 Fed. Appx. 915, 918 (11th Cir. 2010) (Title VII does not regulate general vulgarity).

The Eleventh Circuit has repeatedly rejected sexual-harassment claims based on much more severe conduct than at issue here. *See e.g., Guthrie v. Waffle House, Inc.*, 460 Fed. Appx. 803, 804 (11th Cir. 2012) (employee's conduct of grabbing plaintiff's "butt 'two to five times,'" "talk[ing] dirty" to plaintiff, stating he wanted to perform sexual acts with her, and asking plaintiff on multiple dates despite continued refusal was not objectively severe or pervasive to support Title VII claim); *Leeth v. Tyson Foods, Inc.*, 449 Fed. Appx. 849, 853 (11th Cir. 2011) (conduct was not sufficiently severe or pervasive where manager allegedly attempted to pull plaintiff onto his lap, made comments to plaintiff about wanting to "ram his tongue down her throat," went to plaintiff's house uninvited, and called her on multiple occasions to go out with him); *Mitchell v. Pope*, 189 Fed. Appx. 911, 913-14 (11th Cir. 2006) (conduct was not "severe" enough where plaintiff alleged 16 specific instances of offensive conduct by her supervisor, including offensive utterances and three instances in which he touched or attempted to touch her); *Howard v. City of Robertsdale*, 168 Fed. Appx. 883, 885, 889-90 (11th Cir. 2006) (supervisor's offensive comments about employees' bodies and sex lives and sexual jokes made in front of other employees on a regular basis did not rise to the level of objectively severe or pervasive harassment).

Here, there is no allegation or evidence of any *quid pro quo* or request for any sexual favors or promise or exchange of any employment-related benefit. SOMF, ¶32. Nor is there any allegation or evidence of any physical or improper touching or advance made by Grandis. *Id.* Indeed, the testimony confirmed that Grandis's comments were simply meant to be humorous or were one-offs that were not pervasive or were quickly shut down or corrected. SOMF, ¶14. To satisfy the severe and pervasive element, a plaintiff must show that the acts were "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Here, none of the alleged comments were physically threatening, nor were they frequent. BGIS cannot show that the workplace was permeated with sex-based discrimination, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of anyone's employment or create an abusive environment. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213–14 (11th Cir. 2008) (finding no hostile work environment where the harassment was not frequent or threatening); *Aristyld v. City of Lauderhill*, 543 Fed. Appx. 905, 909 (11th Cir. 2013) (finding that reprimands and isolated comments did not rise to level necessary to support hostile work environment claim). BGIS admits that nobody quit, was terminated, or had their employment status changed as a result of Grandis's conduct. SOMF, ¶¶ 24, 27, 29.

## C.  BGIS's Barebones Affirmative Defenses Fail as a Matter of Law

None of the affirmative defenses in BGIS's pleading, DE 46, raise a genuine issue of fact. Indeed, all of the defenses are legally insufficient. Accordingly, Grandis is entitled to partial summary judgment as a matter of law on his claim for severance under Counts I and II.

### 1.  BGIS's First Affirmative Defense: Failure to State a Claim

Grandis has clearly stated and proven by undisputed record evidence, a breach of contract claim. *See supra*, pp. 2-3.  Also, this a not a proper affirmative defense. *Delgado v. Carnival Corp.,* 640 F. Supp. 3d 1286, 1290 (S.D. Fla. 2022) ("Courts in this District routinely strike 'failure to state a claim' defenses labeled as 'affirmative defenses,' because they are not valid affirmative defenses).

### 2.  BGIS's Second Affirmative Defense: Failure to Mitigate Damages

This barebones purported defense, unsupported by any facts, is inapplicable to this case. BGIS failed to pay contractually-required severance in breach of its Employment Contract. The severance benefit was fixed so as to equal the remaining base salary due from the date of

termination through December 31, 2024. By agreeing to pay this amount on an "accelerated" basis no later than thirty days after the termination, the duty to mitigate was made irrelevant by the parties' agreement, meaning that Grandis's damages were unavoidable no matter what happened after the Termination Letter. Further, BGIS suspended Grandis and failed to permit him to meaningfully cure any purported breach or participate in any investigation. *See supra*. BGIS has offered no evidence that Grandis failed to mitigate his damages.

### 3.   BGIS's Third Affirmative Defense: Statute of Limitations

Grandis was terminated April 7, 2022 and filed suit on July 15, 2022. This barebones defense is specious.

### 4.   BGIS's Fourth Affirmative Defense: Waiver, Estoppel and/or Laches

This barebones purported defense, unsupported by any facts, is inapplicable to Grandis's claim against BGIS for breaching its own contract. BGIS has offered no evidence that would support any claim that Grandis has waived or is estopped from bringing his contract claim, or unduly delayed bringing it to BGIS's prejudice where Grandis filed suit on July 15, 2022 after his April 7, 2022 termination. *See Commc'ns, Inc. v. Ernest*, No. 10-20019-cv-Jordan, 2011 WL 13220159, at *4 (S.D. Fla. Dec. 12, 2001) (granting partial summary judgment for plaintiff).

### 5.   BGIS's Fifth, Sixth and Seventh Affirmative Defenses: Acts, Omissions, Carelessness and/or Negligence of Third Persons or Plaintiff and Intervening or Superseding Acts

These barebones purported defenses, unsupported by any facts, are inapplicable to Grandis's claim against BGIS for breaching its own contract. BGIS is the only party that caused Plaintiff's damages. BGIS has offered no evidence otherwise. These is a tort defense plucked by BGIS from a pleading template not suited for this case.

6. **BGIS's Eighth Affirmative Defense: Assumption of Risk**

This barebones purported defense, unsupported by any facts, is inapplicable to Grandis's claim against BGIS for breach of contract. This is another tort defense not suited for this case.

7. **BGIS's Ninth Affirmative Defense: Unclean Hands**

This barebones purported defense, unsupported by any facts, is inapplicable to Grandis's breach of contract claim. *See Talisman Capital Alternative Investments Fund, Ltd. v. Mouttet,* 2012 WL 13012424, at *9 (S.D. Fla. Feb. 16, 2012) ("Where, as here, a plaintiff seeks to recover solely for damages, the equitable doctrine of unclean hands is inapplicable, and summary judgment as to this defense is appropriate.").

8. **BGIS's Tenth Affirmative Defense: Res Judicata, Collateral Estoppel, and/or Law of the Case**

These barebones purported defenses, unsupported by any facts, are inapplicable to Grandis's claim against BGIS for breaching its own contract. There is no decision in any prior lawsuit between the parties nor any decision on interlocutory appeal to support this defense.

9. **BGIS's Eleventh Affirmative Defense: Set-off**

BGIS has provided no evidence in discovery that it is entitled to any set-off against Grandis. Grandis is the only Plaintiff currently in this lawsuit. Thus, "[s]etoff is permitted only where there is mutuality of claims between the parties[,]" and "[m]utuality of claims requires that the claims exist between the same parties acting in the same capacities." *Wiand v. Meeker*, 572 F. App'x 689, 691 (11th Cir. 2014) (citing *Griffin v. Gulf Life Ins. Co.*, 146 So. 2d 901, 903 (Fla. 1st DCA 1962); *Everglade Cypress Co. v. Tunnicliffe*, 107 Fla. 675, 148 So. 192, 193 (Fla. 1933)).

10. **BGIS's Twelfth Affirmative Defense: After Acquired Evidence**

BGIS cannot rely on any after acquired evidence to resuscitate its wrongful termination of Grandis. In *Tomasini v. Mount Sinai Med. Ctr. of Florida, Inc.*, the court found that:

> had Mount Sinai wanted to reserve to itself the right to investigate the doctor
> following a termination, to ascertain whether during his tenure he had committed
> any acts constituting moral turpitude or gross neglect of duties, and to deny
> severance benefits on the basis of such after-acquired evidence, Mount Sinai, as the
> drafter of the amendment, could have done so. It did not, and cannot now avail itself
> of information gathered during the course of litigation to deny severance benefits
> to one who was not terminated, at the time, for cause. Thus, Dr. Tomasini is entitled
> to summary judgment on his claim for severance pay as well as his claim for the
> 30% lump sum amount.

315 F. Supp. 2d 1252, 1258 (S.D. Fla. 2004). Similarly, BGIS could have, but did not, reserve a

right in the Employment Agreement to investigate Grandis following termination, and even though

BGIS did not gather any actual evidence during the course of this litigation that would support

"Cause," BGIS is precluded from now trying to do so. *Id.*

### III.   REQUEST FOR HEARING

Pursuant to S.D.L.R. 7.1(b)(2), Plaintiff respectfully requests a hearing on this Motion

given the importance of the issues presented herein, the size of the record, and as resolution of the

issues raised herein will likely narrow any issues for, or potentially avoid altogether, a trial.

Plaintiff estimates 30 to 45 minutes would be required for argument.

### IV.   CONCLUSION

The contract at issue—the Employment Contract between Grandis and BGIS—is clear and

unambiguous regarding Grandis's entitlement to severance. For all of the foregoing reasons,

Plaintiff respectfully requests that the Court grant his motion for partial summary judgment.

Respectfully submitted,
BENNETT AIELLO KREINES
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012

By:     /s/ Jeremy R. Kreines
        Michael P. Bennett, FBN 775304
        mbennett@bennettaiello.com
        Paul Aiello, FBN 909033
        paiello@bennettaiello.com
        Jeremy R. Kreines, FBN 101119
        jkreines@bennettaiello.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of November, 2023 a true and correct copy of the

original of this document was submitted through CM/ECF for filing and service upon the

attorneys of record in this action.

/s/     Jeremy R. Kreines
        Jeremy R. Kreines