IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 22-61477-CIV-SINGHAL/VALLE

DEVIN GRANDIS,

              Plaintiff,

v.

BGIS GLOBAL INTEGRATED SOLUTIONS US LLC,

              Defendant.

_____/

---

**PLAINTIFF'S OPPOSITION TO BGIS'S MOTION TO DISMISS OR
ALLOW ADDITIONAL DISCOVERY WITH MEMORANDUM OF LAW**

---

Devin Grandis ("Grandis") files this Opposition to BGIS Global Integrated Solutions US LLC's ("BGIS") Motion to Dismiss or Allow Additional Discovery (DE 173, the "Motion").[1]

## I.   INTRODUCTION

This case arises out of BGIS's failure to pay in excess of $800,000 in contractually-required severance to Grandis following BGIS's wrongful termination of Grandis shortly after acquiring his company, Advanced Power Technologies, LLC ("APT"). On December 23, 2021, BGIS, as purchaser, entered into an Asset Purchase Agreement ("APA") with APT, as seller, and Grandis, as founder. The APA closed on December 31, 2021, DE 171, p. 1, and Grandis was added to BGIS's payroll on February 7, 2022. DE 134-7, 55:16-55:2. On April 7, 2022, BGIS notified Grandis that his employment was terminated exactly two months later. DE 171, ¶ 22. The deal contemplated APT would receive up to $15 million, *id.*, ¶ 10, and Grandis would receive a base salary or severance, unless BGIS fired him for cause, DE 171-1, pp. 1, 2, along with stock options. Since firing Grandis, BGIS has taken the position that Grandis is not entitled to the severance or stock option benefit, *id.*, ¶¶ 22-24, and APT is not entitled to any further consideration under the APA; indeed, according to BGIS, APT owes it money. *Id.*, ¶¶ 13-14. To add insult to injury, after firing Grandis, BGIS continued to use a facsimile stamp (the "Stamp") of Grandis's signature to sign various checks, despite express knowledge that Grandis was no longer affiliated with BGIS and instructed BGIS to cease and desist from using his Stamp. *Id.*, ¶ 40.

Because BGIS refused to return his Stamp, Grandis's predecessor counsel included in the initial complaint a RICO claim against BGIS. Only after Grandis filed this claim did BGIS cease its repeated misuse of the Stamp. *Id.*, ¶¶ 53-54.

---

[1] On January 22, 2024, the Court entered an Order denying BGIS's Motion to Strike Plaintiff's Amended Complaint. DE 176. Accordingly, this Opposition does not address BGIS's request to strike all or any portion of the Amended Complaint as the Court already has denied BGIS's request.

On January 3, 2024, Grandis's current counsel, with leave of Court (DE 167), filed an Amended Complaint (DE 171), re-pleading as a conversion claim the very same facts for which Grandis's predecessor counsel asserted a RICO claim. BGIS's Motion, which is bloated with twenty-nine pages of repetitive argument in the motion, memorandum, and table prepared by BGIS's counsel, DE 173, pp. 1-23, DE 173-2, pp. 2-6, completely misses the mark. Nowhere in the Motion does BGIS assert that Grandis's claim is implausible. Instead, BGIS contends that the claim for conversion is legally insufficient. Yet the case law shows otherwise. Moreover, BGIS's purported claim of surprise or that additional discovery is needed falls flat. BGIS has failed to demonstrate good cause or excusable neglect to re-open discovery at this late juncture. Accordingly, the Motion should be denied in its entirety.

## II.    PROCEDURAL HISTORY

On July 15, 2022, Grandis and APT filed a six-count complaint against BGIS and BGIS's parent company BIFM in the Seventeenth Judicial Circuit Court for (I) Count I – Breach of the Employment Contract against BGIS and BIFM; (II) Count II – Breach of the Covenant of Good Faith and Fair Dealing Regarding the Employment Contract against BGIS; (III) Count III – Breach of the APA against BGIS; (IV) Count IV - Breach of the Covenant of Good Faith and Fair Dealing Regarding the APA against BGIS; (V) Count V - Civil Remedy for Criminal Activities against BGIS based upon the Stamp; and (VI) Count VI - Securities Fraud under Florida law against BGIS and BIFM. *Complaint*, DE 1-1. BGIS and BIFM removed the action to this Court on August 9, 2022 based upon diversity jurisdiction. DE 1, ¶ 15.

BGIS did not file any motion to dismiss or for more definite statement as to Count V (the RICO claim). On January 31, 2023, in its Answer, BGIS admitted it used the Stamp following firing Grandis; although, according to BGIS, the Stamp was allegedly used with Grandis's

permission. DE 46, ¶¶ 68, 70. On August 10, 2023, BGIS filed an opposition to Grandis's Motion to Substitute Counsel, arguing: "BGIS believes that Grandis may be using the substitution as a ploy—in part—to delay the schedule, and that "BGIS is prepared to move forward according to the current Court-ordered litigation schedule." DE 71. On August 28, 2023, after litigating the case for over a year, BGIS filed a motion for judgment on the pleadings as to Count V. DE 78.

On September 1, 2023, BGIS took Grandis's deposition from 9:01 a.m. until it completed the deposition at 1:29 p.m. DE 119-3, p.1:18 and p. 155:14-15 (BGIS Counsel: "I don't have any other questions for you, Mr. Grandis."). On November 10, 2023, BGIS filed its Motion for Partial Summary Judgment on Count V (RICO claim based upon the Stamp) and the aspect of Counts I and II related to Grandis's claims with respect to the stock options. DE 118. On December 4, 2023, Grandis filed his Opposing Statement of Material Facts (DE 143), which included a Declaration from Grandis, covering information related to the RICO and stock option claims not explored by BGIS during his deposition. DE 143-1. Not once during pretrial or the extensive briefing of BGIS's summary judgment motion did BGIS ever suggest that BGIS needed more discovery about Grandis's claims related to the stock option benefit or the Stamp.

On December 14, 2023, BGIS filed an "Emergency" Motion to continue the trial and the court-ordered deadline provided for BGIS to comply with an Order granting Grandis's Motions to Compel. DE 155. BGIS argued that "BGIS has been diligent in preparing its case for trial. BGIS completed all its written discovery from Plaintiff well in advance of the cutoff. BGIS deposed Plaintiff on September 1, 2023—four weeks before the final discovery cutoff." *Id.*, p. 10. BGIS argued also that "[t]here is no need for additional motion practice, refiling of anything filed to date, or alteration of anything except the date that trial begins." *Id.* Despite knowledge for many weeks

if not months before the discovery cutoff of the facts relating to the Stamp and stock option benefit, BGIS never suggested it was proceeding without sufficient discovery and needed more discovery.

### III.   ARGUMENT AND AUTHORITIES

#### A.   Legal Standard on a Motion To Dismiss

"When evaluating a motion to dismiss under Rule 12(b)(6), the question is whether the complaint contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); s*ee also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Worthy*, 930 F.3d at 1217. The Court is guided by the well-known principle that, on a motion to dismiss for failure to state a claim, the Court assumes all well-pled allegations in the Complaint are true and views them in the light most favorable to the plaintiff. *Jackson v. Okaloosa Cty.*, 21 F.3d 1531, 1534 (11th Cir. 1994). Again, BGIS does not contest plausibility; instead, BGIS asserts only that Grandis's Stamp claim is legally insufficient.

#### B.   Grandis Has Stated a Claim for Conversion.

As alleged in the Amended Complaint, after BGIS terminated Grandis's employment, BGIS continued to use his Stamp without his permission and over his objection after he demanded that BGIS cease using and return his Stamp. DE 171, ¶40. As the Court noted in its December 20, 2023 Order, and as Grandis alleged in the Amended Complaint, "firing someone 'for cause' but continuing to use his signature to conduct business would seem to be a very good dictionary definition of fraud." DE 167, p. 6, n.4 (citing *U.S. v. Russ, et al.*, No. 23-60007-CR-SINGHAL (S.D. Fla. 2023) (22 convictions for conspiracy and wire fraud in which a core issue was a stamped

signature on diplomas that was then sent over the wires and through the mail)); *see also* DE 171, ¶56. In addition to being fraudulent, BGIS's misuse of the Stamp constitutes forgery under Sections 831.01 and .02 of the Florida Statutes. DE 171, ¶56. The relevant question, of course, is whether the facts, as currently pleaded, constitute conversion. DE 171, ¶¶39-58.

Under Florida law, conversion is an "act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (citing *Thomas v. Hertz Corp.,* 890 So. 2d 448, 449 (Fla. 3d DCA 2004)) (quotation omitted). A conversion of property can be either permanently or, as occurred here, for a lesser period of time. *Goodrich v. Malowney*, 157 So. 2d 829, 831 (Fla. 2d DCA 1963) (aff'g judgment for plaintiff) (The essence of conversion lies within an unauthorized act which deprives another of his property permanently or for an indefinite time), *followed in Bowling v. Stark*, 268 So. 2d 201, 203 (Fla. 1st DCA 1972) (rev'g summary judgment for defendant); *cf. Omnipol, A.S. v. Multinational Defense Servs., LLC*, 32 F.4th 1298, 1307–08 (11th Cir. 2022) (statutory equivalent of conversion includes permanent or temporary theft of another's property); § 812.014(1), Fla. Stat. The tort of conversion "may occur where a person wrongfully refuses to relinquish property to which another has the right of possession," and it "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action." *Id.* (citing *Seymour v. Adams,* 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) (citations omitted)).

In addition to detailed allegations in Grandis's Amended Complaint regarding (1) the protocol established by Grandis for using his Stamp; (2) Grandis's revoking any previous authority given to BGIS to use his Stamp; (3) Grandis's demands that BGIS to return his Stamp; and (4) attaching as exhibits copies of the specific several hundred checks of APT, Creative Lighting, LLC

("Creative Lighting") and Sustainable Management, LLC ("SMS") on which BGIS improperly used his Stamp, Grandis alleges, *inter alia*, that "[a]t all times after Grandis's employment was terminated, Grandis alone had the right to immediate possession of his Stamp. Even though Grandis had demanded return of his Stamp, BGIS ignored the demand for over three months, all the while continuing to exercise dominion over Grandis's Stamp and misusing the Stamp to utter checks to third persons with Grandis's impersonated signature." DE 171, ¶55. BGIS has not argued, nor could it, that the Amended Complaint lacks "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Worthy*, 930 F.3d at 1217. Accordingly, Grandis undoubtedly has stated a claim for conversion and the Motion should be denied.

        C.  <u>Grandis Alleges Damages.</u>

BGIS's principal argument is that Grandis has not alleged a legally cognizable harm for his conversion claim. *Motion*, pp. 18-19. BGIS misapplies the law to set up a strawman argument to request dismissal because Grandis does not seek the fair market value of the Stamp. *Id*. But the common law of conversion does not limit Grandis to the fair market value of the Stamp, nor would the same even make sense.

*Allegations overlooked in the Motion.* BGIS ignores that Grandis has alleged that he is entitled to recover damages, including compensation for reputational damage, annoyance, and anguish or humiliation resulting from BGIS's conversion of his Stamp, consequential damages, including legal fees and court costs that he was forced to incur as a result of BGIS's misuse of the Stamp to continue the lease on the vehicle that is the subject of a lawsuit in Virginia against SMS, or, at a minimum, nominal damages for BGIS's invasion and violation of Grandis's legal rights with respect to his Stamp and rampant misuse of his Stamp by BGIS. DE 171, ¶57. BGIS further

fails to address that Grandis also has alleged entitlement to recover punitive damages. DE 171, ¶¶58-59. Grandis has alleged damages resulting from BGIS's conversion of his Stamp.

*Grandis Does Not Seek Damages Based upon the Stamp's Value.* Instead of focusing on what Grandis has alleged, BGIS preoccupies itself with what is not alleged by focusing on the general damages recoverable for conversion. According to BGIS, Grandis has no damages unless he seeks the value of the Stamp at the time it was converted. *Motion*, pp. 15-16 (citing *Gillette v. Stapleton*, 336 So. 2d 1226 (Fla. 2d DCA 1976) and *Lilly v. Bronson*, 177 So. 218 (Fla. 1937)). The analysis in both *Gillette* and *Lilly* was whether a conversion claimant could recover the replacement value of converted property. *Gillette*, 336 So. 2d at 679; *Lilly*, 177 So. at 1228. The courts in *Gillette* and *Lilly* reversed judgments because awards were granted for the replacement value of a car in *Gillette* and a boat in *Lilly*, rather than the reasonable value when converted. *Id.* These decisions are inapposite here as Grandis does not seek to recover the value of the Stamp, nor do these decisions limit conversion claimants to the value of the property converted. This measure of general damages from conversion has no application to Grandis's claim.

*Other Damages Recoverable from Conversion under Florida Law.* The damages argument in the Motion is undermined by a long line of cases in Florida's state and federal courts that hold the liability for conversion may exist even if the property is without monetary value. *E.g., Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.,* 781 F.3d 1245 (11th Cir. 2015); *Spradley v. Spradley*, 213 So. 3d 1042, 1043 n.2 (Fla. 2d DCA 2017) (to state a valid cause of action for conversion, it does not matter whether the specific property that is converted has any actual value). The rationale for not fixing a hard and fast rule when it comes to damages from conversion was explained by the Florida Supreme Court in 1942:

> It is often impossible to place what is a current market value on such articles but the law does not contemplate that this be done with mathematical exactness. The

law guarantees every person a remedy when he has been wronged. If the damage is to personal property as in this case, it may be impossible to show that all of it had a market value. In fact it may be very valuable so far as the owner is concerned but have no value so far as the public is concerned. It would be manifestly unfair to apply the test of market value in such cases.

<u>When the wrong is shown it becomes the duty of court and jury to apply a test that will reasonably compensate the person wronged rather than one that makes it impossible to do so</u>. The principle of *res ipsa loquitur* may be used to aid the result even though not technically applicable.

*Florida Public Utilities Co. v. Wester,* 7 So. 2d 788, 790 (1942), *followed in Christopher Advert. Group, Inc. v. R & B Holding Co., Inc.,* 883 So. 2d 867, 871 (Fla. 3d DCA 2004) ("The damage rules must be flexibly applied so as to provide fair compensation under the circumstances of the specific case."), *cited in Motion*, p. 20.

Because courts do not limit conversion claimants to the value of the property converted by the defendant, mental anguish and inconvenience arising from the loss of use of property are also allowed. *In re Ocean Transp. Corp.,* 213 B.R. 383, 386 (Bankr. N.D. Fla. 1997); *see also McMurrain v. Fason*, 584 So. 2d 1027, 1032 (Fla. 1st DCA 1991) (damages for deprivation of use of property not restricted to pecuniary loss and can "encompass injury to social standing or reputation as well as humiliation and mortification.").

BGIS's reliance on *Lee Cnty. Bank v. Winson*, 444 So. 2d 459 (Fla. 2d DCA 1983) is misplaced. There, a debtor sued a bank for conversion when the bank wrongfully refused to return a car after the bank repossessed it. The court found that the damages there should have been measured by the reasonable value of the car – an asset that has a specific fair market value. The court found that the plaintiff did not plead a separate tort against the bank for slander of title, which has no relevance here as BGIS is not a bank or finance company. *See Musto v. Bell S. Telecommunications Corp.,* 748 So. 2d 296, 297 n.1 (Fla. 4th DCA 1999) (slander of credit is claim where finance company willfully and maliciously makes false statement to another finance

company regarding plaintiff's indebtedness that is known to be false and made with intent to prevent plaintiff from procuring credit).

Further, it is well settled that "nominal damages are available in conversion actions." *Gamma Dev. Corp. v. Steinberg*, 621 So. 2d 718, 719 (Fla. 4th DCA 1993) (citing *King v. Saucier,* 356 So. 2d 930, 931 (Fla. 2d DCA 1978) (where party claims an invasion of legal right, nominal damages are appropriate) (quoting *Hutchinson v. Tompkins,* 259 So. 2d 129 (Fla.1972)). Surprisingly, the Motion insists that the conversion claim must be dismissed, without once addressing this black letter rule. Worse still, the Motion omits any analysis of the availability of punitive damages. *See, e.g.*, *Doral Country Club, Inc. v. Lindgren Plumbing Co.,* 175 So. 2d 570, 571 (Fla. 3d DCA 1965) (Florida law permits punitive damages for conversion if there is malice, fraud, or recklessness). A punitive damage award for conversion does not require proof of any other damages, including, without limitation, even an award by the jury of nominal damages. *Eglin v. Fed. Credit Union*, 386 So. 2d 860, 862 (Fla. 1st DCA 1980), *approved in Ault v. Lohr*, 538 So. 2d 454, 456 (1989) (disapproving *Raffa v. Dania Bank*, 372 So. 2d 1173 (Fla. 4th DCA 1979). In *Ault*, the Florida Supreme Court rejected the "contention that at least nominal damages must first be awarded before punitive damages are proper." Grandis is entitled to recover the damages sought, and BGIS's Motion must be denied.

D. BGIS's Conversion Caused Grandis's Damages.

In addition to nominal and punitive damages, Grandis can recover the monetary damages he alleges, as the conversion was their legal cause. DE, 171 ¶ 57. BGIS "splits hairs" in the Motion, arguing *misuse* of the Stamp – not its *conversion* – caused the damages. *Motion*, p.17. This purported distinction without a difference falls flat. BGIS did not forget to return the Stamp, nor was the Stamp innocently forgotten in a desk drawer. Instead, despite repeated demands for its

return, BGIS chose not to return Grandis's Stamp and exercised dominion over it, using it almost daily to impersonate Grandis's signature whenever it suited BGIS to do so. By this conversion (a) vendors were duped into believing that Grandis was deciding how much and when they were paid and (b) leases were renewed such that Grandis's other business, SMS, not BGIS, would be exposed to vicarious liability on vehicles transferred to BGIS under the APA. DE 171, ¶¶ 49-52.

As held in *R & B Holding Co., Inc. v. Christopher Advert. Group, Inc.,* 994 So. 2d 329 (Fla. 3d DCA 2008), a case also cited by BGIS, *Motion*, p. 15, a party may also seek damages for any pecuniary loss caused by the conversion. *Id.* at 332 (citing Restatement (Second) of Torts § 927 (1979)), or for anguish, reputational damages, and inconvenience caused by the conversion. *Id.,* comment m; *In re Ocean Transp. Corp. supra*, p. 8; *McMurrain v. Fason*, *supra* p. 8.

Finally, BGIS improperly seeks a finding on a motion to dismiss as to the "legal cause" of Grandis's damages. Ordinarily, causation in the context of an intentional tort is a jury issue that depends on whether it was foreseeable that the defendant's conduct would cause the type of harm suffered by the claimant. *See Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (applying Fla. law); *see also Pearson v. Deutsche Bank AG*, 2023 WL 3043406, at *8-9 & n.7 (Apr. 22, 2023) (denying motion for judgment as a matter of law after trial on conversion claim). Accordingly, the Motion should be denied.

E. <u>Grandis's Opposition to BGIS's Motion to Re-Open Discovery</u>

a. <u>Legal Standard</u>

To justify its request to extend the fact discovery deadline, BGIS must show good cause and excusable neglect. *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 944 (11th Cir. 2015) ("A party seeking the extension of an already-expired scheduling order deadline must show both good cause *and* excusable neglect."); *Fed. Election Comm'n v. Rivera*, 17-22643-CIV, 2021 WL 8820201, at *1 (S.D. Fla. Feb. 25, 2021) (citing Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order

"may be modified only for good cause and with the judge's consent."). BGIS has failed to demonstrate good cause or excusable neglect to re-open discovery and extend the discovery deadline. *See Frank v. AGA Enterprises, LLC*, 17-61373-CIV, 2020 WL 3529292, at *2 (S.D. Fla. June 30, 2020) ("The 'good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension."'") (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note)).

A moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241–42 n. 3 (11th Cir.2009); *see also Kauffman v. Trans High Corp.*, 3:20-CV-17-MMH-JBT, 2022 WL 18492517, at *2 (M.D. Fla. Jan. 27, 2022) ("In short, it appears that Defendants, through their own fault, have dropped the ball in this case regarding discovery—both in seeking it and in responding to Plaintiff's discovery requests. The latter failure finally resulted in Defendants being sanctioned. … The Court will not relieve Defendants of the consequences of their obvious neglect."); *Compass iTech, LLC v. eVestment All., LLC*, 14-81241-CIV, 2017 WL 1290849, at *3 (S.D. Fla. Mar. 24, 2017) ("A district court is not obligated to extend the discovery deadline, and may 'hold litigants to the clear terms of the scheduling order.'").

To the extent BGIS did not obtain discovery regarding the facts at issue, it was due to its own lack of diligence; not because of any new allegations. *See Ashmore v. Sec'y, Dept. of Transp.*, 503 F. App'x 683, 686 (11th Cir. 2013) (aff'g denial of motion to reopen discovery) (non-movant had already filed motion for summary judgment, no clear showing movant needed more discovery, no valid reason for movant's delay, and judicial economy weighed against granting the motion).

> **b.** <u>BGIS Has Failed to Demonstrate Good Cause or Excusable Neglect to Re-Open Discovery</u>

Absolutely nothing new or surprising is alleged in the Amended Complaint. From the beginning of this case, BGIS has known that Grandis is asserting claims based upon BGIS's misuse of his Stamp to endorse checks without his approval and over his objection. *See* Complaint (DE 1-1), ¶39. In fact, as set forth *supra*, BGIS (incorrectly) argues that the conversion count should be dismissed because Grandis alleges, as he did in his RICO count, facts that relate to misuse rather than conversion of the Stamp. *Motion*, p. 17.

BGIS argues that there are allegedly "new" allegations in the Amended Complaint about the protocol Grandis established regarding use of his Stamp and his demanding return of his Stamp. Motion, pp. 18-19. However, none of the conversion claim is new. The conversion claim arises from the exact same facts and transactions that underpinned the RICO claim. One element of the RICO claim on the face of the original complaint was whether BGIS used Grandis's Stamp without Grandis's authority and over his objection to forge checks on behalf of APT and Creative Lighting in violation of Chapter 831, Florida Statutes. DE 1-1, ¶¶ 39, 68, 69 & n.4. These same facts are the gravamen of the conversion claim alleged in the Amended Complaint. DE 171, ¶¶40-45, 55-56.

It was incumbent upon BGIS to serve or take discovery regarding the facts underlying these allegations and the witnesses with knowledge if it deemed such discovery necessary. A review of the record makes clear that BGIS focused its discovery on the plaintiff, himself, and not on any of its current or former employees unless Grandis sought testimony from them.

To that end, BGIS never took the deposition of Annie Lasaga, yet now tries to blame Grandis for that decision by pointing to Grandis's initial disclosures, which were served by predecessor counsel back on September 9, 2022. Grandis disclosed Ms. Lasaga as an individual

likely to have discoverable information, including that she was the "Former Controller for APT and transitioned as an employee to BGIS . . . . She may also have knowledge of the Accounting Principles, practices, procedures and methodologies used by BGIS and/or APT." DE 173-1. The protocol regarding the use of the Stamp certainly falls within this broad description of the knowledge of the Controller who had worked at APT for many years. BGIS does not argue that it was unable to take Ms. Lasaga's deposition; it simply chose not to. This alone fails to meet good cause or excusable neglect. *See Sweet v. Lockheed Martin Corp.*, No. 1:08-CV-2094-WBH-SSC, 2009 WL 10664952, at *3 (N.D. Ga. Aug. 21, 2009) (denying motion to reopen discovery where movant did not dispute they "had the opportunity to take the depositions...during the [ ] discovery period but chose not to do so"); *see also In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-MD-2885, 2021 WL 6327368, at *2 (N.D. Fla. Aug. 19, 2021) (holding plaintiffs would be prejudiced by costs and burdens of preparing for and taking deposition out of time in the middle of preparing for trial, and "[t]his alone is a sufficient basis to deny Defendants' motion").

Further, while BGIS argues that the Stamp is not specifically mentioned in the Initial Disclosures description for Ms. Lasaga, this is a red herring as the Stamp is also not specifically mentioned in the description for Grandis. Nothing prevented BGIS from asking Grandis in discovery or during his deposition about persons with knowledge regarding the Stamp or any other facts underlying the use of the Stamp. Moreover, BGIS never asked Grandis's counsel or this Court to re-open Grandis's deposition. Absolutely nothing prevented BGIS from conducting the discovery it now purports to seek. *See Mont Claire at Pelican Marsh Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.,* 2:19-CV-601-SPC-KCD, 2023 WL 3058038, at *2 (M.D. Fla. Apr. 24, 2023) (what matters is not when party was alerted to the issue it now wants to investigate, but whether it could have unearthed these facts before the discovery deadline); *see also Williams v. Blue Cross*

*& Blue Shield of Fla., Inc.*, No. 3:09CV225/MCR/MD, 2010 WL 3419720, at *1 (N.D. Fla. Aug. 26, 2010) ("[T]he moving party cannot establish the diligence necessary to show good cause if it had full knowledge of the information before the scheduling deadline passed or if the party failed to seek the needed information before the deadline.").

BGIS's decision to focus upon Grandis alone in discovery began with twenty detailed interrogatories that Grandis was forced, by reason of his prior counsel's decision, to answer six days after his current counsel appeared in this action. DE 134-15, pp. 9-10, Interrogatories 15-19. Sixteen days later, again not wanting to delay discovery, Grandis appeared for his deposition, which had been scheduled by BGIS three weeks before his current counsel had even heard of this case. Given the discovery cut-off was September 28, 2023, Grandis and his current counsel worked around the clock to produce as many responsive documents as possible in advance of the deposition and prepare Grandis for the only deposition that BGIS chose to take in this action. BGIS was fully aware of these circumstances when it decided to proceed with Grandis's deposition as scheduled. BGIS examined Grandis at length about the Stamp. DE 119-3, pp. 128-32. This testimony all relates to issues for which BGIS now claims to need more discovery, including, for example, the following portions of the deposition:

> Q: What was the purpose of that signature stamp?
> A: As a result of me traveling a lot and my long-term relationship with the -- <u>certain people in the accounting department, I gave them permission to use my stamp</u> for making payables and similar items, and then I would review what that stamp was used for post use.

DE 119-3, p. 127:10-17 (emphasis added). Nothing prevented BGIS from asking who those certain people were or what protocols were in place regarding their permission to use the Stamp.

> Q: Would you object to the use of your stamp to accomplish those objectives that we just identified after your termination from BGIS?
> A: Yes.
> Q: Why?

14

> A: Because I'm no longer in control of knowing what is getting paid, how it's getting paid, and they were using that stamp for companies that they didn't even have control over. That would be like me signing your name to checks out of your company without you knowing about it.
> Q: Okay. What do you mean when you said they were using it for companies that they didn't have control over?
> A: Well, they didn't own Creative Lighting and they didn't own Sustainable Management Solution, but my understanding was they were using the stamp for those as well.

*Id.*, p. 128:13-129:11. Nothing prevented BGIS from asking further questions about how Grandis exercised control over what was paid using the Stamp and if he had any checks or balances in place.

> Q: I'm asking specifically about monetary damages from the use of the signature stamp.
> A: Yes. So, again, the monetary damages would be legal. It would be an unknown amount that would be caused by paying late and hurting my name in the industry. And I -- I didn't get any record of things bounced, so I couldn't really address that. Those would be the primary -- and the fact that if my credit rating went down, it would cost me more in interest.

*Id.*, p. 130:22-131:5.  Nothing prevented BGIS from asking further questions about how Grandis's name was known or damaged in the industry as a result of BGIS's misuse of the Stamp, nor any other questions relating to facts surrounding Grandis's claims regarding the Stamp. BGIS used some of the testimony to support its prior motion for summary judgment. DE 119, pp. 6-9, ¶¶ 26-27, 32, 34, 36. BGIS completed Grandis's deposition after 5.5 hours at 1:29 p.m., with BGIS's counsel stating "I don't have any other questions for you, Mr. Grandis." DE 119-3. BGIS was permitted another 1.5 hours under Rule 30(d) if it had additional questions, but BGIS asked Grandis everything it could possibly think of.

On September 19, 2023, Grandis filed his Response in Opposition to BGIS's Motion for Judgment on the Pleadings (DE 89), in which Grandis argued, *inter alia*:

> While Mr. Grandis was employed by BGIS, he could oversee, control, and approve the use of his Stamp. However, following his termination, where BGIS actively

> severed Mr. Grandis's relation with the company, Mr. Grandis had no control, knowledge, or approval of the use of his Stamp. But even more, Mr. Grandis, upon discovering that BGIS continued to use his Stamp without his knowledge, demanded that BGIS cease and desist from doing so. Yet, BGIS refused and continued to misuse the Stamp. Mr. Grandis was forced to file this action to force BGIS to stop its repeated misuse of the Stamp. *See Fla.-Ga. Chem.*, *supra* p. 7, note 5. Thus, even if BGIS had prior consent, it was and could be withdrawn after Mr. Grandis' termination, meaning whether Count V is viable depends upon the resolution of factual disputes not properly determined on a motion for judgment on the pleadings (or even on summary judgment, for that matter, as it raises genuine disputes of material fact, which require discovery and a decision by the fact-finder based upon all of the evidence).

DE 89, pp. 7-8. Thus, BGIS was again further "on notice" regarding Grandis's theory that Grandis's use of the Stamp was limited to a protocol where he had control and approval of its use, and that Grandis demanded BGIS cease using the Stamp. Again, BGIS decided not to conduct any additional discovery or seek to extend the discovery cut-off.

BGIS also makes much ado about Grandis's production of the checks forged with the converted Stamp on September 21, 2023. *Motion*, p. 11. However, noticeably absent from the Motion is any suggestion that BGIS itself did not have these checks. APT, Creative, and SMS used BGIS's Pompano Beach office as their address as indicated by the checks themselves. Thus, the checks and bank statements were in BGIS's possession. BGIS also had all of the QuickBooks software with which the checks were written. In other words, the checks upon which Grandis based the RICO and conversion claim were available to BGIS long before Grandis produced them. Regardless, BGIS did not request to postpone Grandis's deposition and never requested that Grandis's deposition be re-opened because Grandis was unable to produce the checks until September 21. Instead, BGIS waited nearly four months, well after the discovery cut-off, to file its "Expedited" Motion and raise this "issue" for the first time. If BGIS felt it needed to question Grandis about checks produced in September, the time to do so was back in September.

Further, on December 4, 2023, Grandis filed his Opposing Statement of Material Facts (DE 143) in opposition to BGIS's Motion for Partial Summary Judgment and Statement of Material Facts (DE 118 and 119). In support, Grandis filed a Declaration under penalty of perjury that contained the facts now referred to in the Amended Complaint, DE 143-1, ¶¶ 18-28, including details about the forged checks. If BGIS felt it needed additional discovery regarding these sworn facts and documents, the Federal Rules provided BGIS a mechanism—a Rule 56(d) Motion. Instead, on December 14, 2023, BGIS filed its Reply Statement of Facts (DE 157) and Reply in Support of its Motion for Summary Judgment (DE 156).

Finally, on December 19, 2023, BGIS filed its Unopposed Response to Order to Show Cause, arguing that both its Motion for Partial Summary Judgment and Grandis's Motion for Partial Summary Judgment were ripe for adjudication, arguing that "[t]here is not a single reference in any of the summary judgment briefing to missing evidence due to outstanding discovery and, obviously, neither party filed a Rule 56(d) motion. If either party felt that additional discovery was necessary to fully brief their respective summary judgment motions, there was a mechanism in the Federal Rules—Fed. R. Civ. P. 56(d)—to postpone summary judgment." DE 161, pp. 1-2. BGIS further argued "[m]ost importantly, both parties agree that there is no reason to strike the pending summary judgment motions and force both parties to spend significant resources and attorneys' fees on a do-over." *Id.* p.2. BGIS further argued "when all parties have had a sufficient opportunity to conduct discovery, there is no justification to delay summary judgment briefing and a summary judgment ruling. That is the case here. Both parties had almost fifteen months to initiate and complete the discovery … both parties agree they do not require additional discovery." *Id.*, p. 4.

BGIS's own filings sounded the death-knell to its current Motion months before it was filed. BGIS has been on notice of the facts and documents upon which Grandis's Stamp claim is based for months if not years. All of the facts and documents were disclosed or available prior to the discovery cutoff. BGIS never sought to re-open Grandis's deposition, depose other witnesses, or re-open discovery. Nor did BGIS file a Rule 56(d) motion. BGIS's eleventh-hour Motion is clearly an attempt to further delay trial or unnecessarily increase the cost of the litigation.

Taking BGIS's own words, "there is no reason to … force both parties to spend significant resources and attorneys' fees on a do-over … [and] when all parties have had a sufficient opportunity to conduct discovery, there is no justification to delay summary judgment briefing and a summary judgment ruling." *Id.*  As of matter of law, BGIS has admitted a lack of due diligence. *See, e.g.*, *Beyel Bros., Inc. v. EMH, Inc.,* 2:19-CV-14392, 2021 WL 9347068, at *1 (S.D. Fla. Nov. 19, 2021) ("After careful review, the Court concludes that Defendant has not shown good cause to reopen discovery, four months after the deadline lapsed") (citing *Saewitz v. Lexington Ins. Co.*, 133 F. App'x 695, 700 (11th Cir. 2005) (seeking to reopen discovery one month after the "already-extended time for discovery had closed" is a "classic example of an undue delay in filing.")). In short, BGIS's claim that it somehow now needs more discovery is simply another delay tactic that will increase litigation expense needlessly. And to the extent that BGIS chose for strategic or other purposes not to pursue relevant discovery in the past, BGIS should not be permitted to re-open discovery at this late juncture, to Grandis's prejudice.

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2); *see also Sams v. United Food and Commercial Workers Int'l Union,* 866 F.2d 1380, 1384 (11th Cir.1989) ("A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as

to the claim being asserted against him and the grounds on which it rests."). In the Amended Complaint, Grandis's current counsel cleaned up predecessor counsel's Complaint and conformed the allegations to the evidence uncovered in discovery. BGIS had notice of the facts underlying the Stamp claim long before Grandis filed his Amended Complaint.

*Turner v. Neptune Towing & Recovery, Inc.,* 2010 WL 3154082, at *2 (M.D. Fla. Aug. 9, 2010) is directly on point. There, the court denied defendant's renewed motion to dismiss or in the alternative to reopen discovery and continue trial, which argued plaintiff included "a brand new unjustified claim of salvage" in the second amended complaint. *Id.* at *1. The court found the defendant failed to demonstrate good cause to reopen discovery or continue the trial, nor did defendant show any prejudice, as the prior complaint plainly informed defendant that the action was based, in part, on a claim for salvage. *Id.* Identical to here, Grandis's prior claim was clearly based on BGIS's mis-use of the Stamp. BGIS has failed to demonstrate good cause to reopen discovery nor shown any prejudice. *Id.* However, Grandis will suffer prejudice if BGIS is permitted to re-open discovery or further delay this case. *See Lira v. Arrow Air, Inc.,* 05-23731-CIV, 2007 WL 188163, at *3 (S.D. Fla. Jan. 22, 2007) ("…lengthening of the litigation would be injurious to the public interest in the 'just, speedy, and inexpensive determination' of this action. Fed.R.Civ.P. 1. Essential to such a resolution is the adherence to firm, early deadlines for discovery and trial.... To once again mobilize the discovery mechanism in this case, without good cause being shown, would render these deadlines, both in this case and in future cases, pointless.").

WHEREFORE, Plaintiff, Devin Grandis, respectfully requests that Defendant's Motion to Dismiss or Allow Additional Discovery be denied in its entirety and a deadline to re-file motions for summary judgment be reinstated.

Respectfully submitted,

BENNETT AIELLO KREINES
3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012

By:    */s/ Jeremy R. Kreines*
       Michael P. Bennett, FBN 775304
       mbennett@bennettaiello.com
       Paul Aiello, FBN 909033
       paiello@bennettaiello.com
       Jeremy R. Kreines, FBN 101119
       jkreines@bennettaiello.com

### CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of January, 2024 this document was submitted through CM/ECF for filing and service upon the attorneys of record in this action.

By:    */s/ Jeremy R. Kreines*