IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 22-61477-CIV-BECERRA/VALLE

DEVIN GRANDIS,

          Plaintiff,

v.

BGIS GLOBAL INTEGRATED SOLUTIONS US LLC,

          Defendant.

_____/

### PLAINTIFF'S MOTION TO STRIKE AMENDED AFFIRMATIVE DEFENSES

Plaintiff, Devin Grandis ("Grandis"), files this Motion to Strike the Amended Affirmative Defenses in the current pleading of Defendant, BGIS Global Integrated Solutions US, LLC ("BGIS"), DE 192, which responds to Grandis's Amended Complaint, DE 171.

### Introduction

On May 16, 2024, Grandis filed his original Motion to Strike Affirmative Defenses, DE 190, which was directed to the responsive pleading filed by BGIS on May 9, 2024. DE 189. On the very last day permitted under Fed. R. Civ. P. 15(a)(1)(A), BGIS filed a new pleading that amended its affirmative defenses to Grandis's Amended Complaint. DE 192. Unfortunately, the amended affirmative defenses are also improper. Therefore, Grandis has filed this motion.

### BACKGROUND FACTS

This case arises out of a corporate transaction that closed on December 31, 2021 by which BGIS acquired substantially all of the assets of Advanced Power Technologies, LLC ("APT") pursuant to a written Asset Purchase Agreement ("APA"). BGIS promised to pay a purchase price for the assets up to $15,000,000, yet the only cash paid for the assets was the $4,500,000 payment

that BGIS made at closing to extinguish the lien of APT's lender. Neither APT nor Grandis, the beneficial owner and Founder of APT, received any cash for the assets. DE 171, ¶¶ 9-14.

As required by the APA, Grandis received a three-year, "no cut" employment agreement (the "Employment Contract") with BGIS. DE 171, ¶ 15 (quoting DE 89-1, p. 50, ¶ 8.3(d)). BGIS promised Grandis various benefits in the Employment Contract, including (a) an option to purchase 500 shares in the "ultimate parent entity of BGIS"; (b) annual bonuses; (c) an annual base salary not less than $300,000 from January 1, 2022 to December 31, 2024 (defined as the "Initial Period") on page 2 of the Employment Contract; and (d) a severance package upon termination equal to the entire base salary for the remaining Initial Period due and payable on an accelerated basis in one lump sum, <u>unless</u> BGIS terminated Grandis's employment for "Cause," an exception that was narrowly defined. *See* DE # 171-1, pp. 1-2, 5. After paying only three months of the guaranteed base salary after the closing, BGIS terminated the employment of Grandis on April 7, 2022. DE 171, ¶ 22.

## SUMMARY OF RELEVANT PROCEEDINGS

On July 15, 2022, APT and Grandis commenced this case in state court, DE 1-1, which BGIS removed to this Court on August 9, 2022. DE 1. In the original complaint, Grandis asserted claims against BGIS under the Employment Contract for breach of the severance and stock option benefits. DE 1-1, Counts I & II, pp. 20-22. APT asserted claims against BGIS for breach of the APA. DE 1-1, Counts III & IV, pp. 22-24. Grandis also asserted a claim for relief under Florida's Civil Remedies for Criminal Practices Act ("FCRCPA"). § 772.104. DE 1-1, Count V, p. 25. Finally, Grandis asserted a claim for securities fraud against BGIS and its parent company, BIFM Jersey Topco Limited ("BIFM"). DE 1-1, Count VI, p. 26.

On November 30 2022, the claims asserted in Counts III and IV were dismissed without a ruling on the merits and referred to arbitration at the request of BGIS. DE 34. On December 16, 2022, BIFM was dismissed for lack of personal jurisdiction. DE 37, p. 7.

Two days before the deadline for amending pleadings, DE 67, p.2, and less than three weeks after Grandis's current counsel appeared in this action, DE 72, BGIS filed a motion for judgment on the pleadings with respect to Grandis's FCRCPA claim. DE 78. On December 20, 2023, the Court granted BGIS's Rule 12(c) motion, yet permitted Grandis leave to amend the original complaint, noting that Grandis had only "recently retained" his current counsel. DE 167, p. 7. Notably, in the order dismissing the FCRCPA claim without prejudice, the Court recognized that "firing someone 'for cause' but continuing to use his signature to conduct business would seem to be a very good dictionary definition of fraud." *Id.*, p. 6, note 4.

***The Amended Complaint.*** On January 3, 2024, Grandis filed his Amended Complaint, which continues to assert claims for breach and bad faith with respect to the severance and stock option benefits in the Employment Contract. DE 171, pp. 8-10, Counts I & II. In addition, Grandis asserts a claim for conversion based upon the refusal of BGIS to return his signature stamp (the "Stamp") after his termination and decision to misuse the Stamp to utter more than three hundred checks over his objection on bank accounts of APT and two other entities affiliated with Grandis, *viz.*, Sustainable Management Solutions, LLC and Creative Lighting, LLC. *Id.*, pp. Count V, pp. 10-15. Further, while no claims are asserted by Grandis or APT with respect to BGIS's breaches and bad faith under the APA, which claims are to be arbitrated, DE 34, Grandis's theory of the case remains that BGIS's plan has been to obtain the assets of APT for next to nothing and avoid

paying the consideration due to APT and Grandis under the APA and Employment Contract. *Id.*, pp. 1-2, ¶¶ 8-14.[1]

    ***BGIS's Motion to Strike Amended Complaint or Dismiss Conversion Claim.*** On January 16, 2024, BGIS filed a motion and memorandum, claiming that Grandis's amended complaint must be stricken as it supposedly exceeded the scope of the leave to amend, and that Count V for conversion must be stricken as it failed to state a valid claim for relief. DE 173. Alternatively, BGIS requested that BGIS be permitted additional discovery on the conversion claim. *Id.* Grandis opposed the motion to strike, dismiss, and request for additional discovery, noting, *inter alia*, that the facts underlying the conversion claim were essentially the same facts that supported the claim under FCRCPA. DE 177. On April 26, 2024, the Court denied BGIS's request to strike Grandis's amended complaint, DE 176, and denied BGIS's motion to dismiss the new conversion claim with respect to Grandis's claim for nominal and punitive damages. DE 184, pp. 5-10. However, the Court sustained BGIS's objection to Grandis's request for actual and consequential damages. *Id.* Finally, while the Court agreed with Grandis's assertion that the facts underlying Count V were disclosed during discovery and in other court filings, DE 184, p. 12, the Court granted "the parties leave to conduct further discovery related strictly to the new conversion claim for a period of 75 days." *Id.*, p. 13.

    ***The Original Motion to Strike BGIS's Affirmative Defenses.*** On May 9, 2024, BGIS filed an answer and affirmative defenses to the Amended Complaint, DE 189, in which BGIS asserted eleven purported affirmative defenses to Grandis's three claims. *Id.*, pp. 10-11. Four days

---

[1] Magistrate Judge Valle has compelled discovery sought by Grandis and denied protective orders sought by BGIS, see DE 160-1, Transcript, Tr. p. 81, line 14 to p. 82, line 3, p. 83, line 24 to p. 84, line 1, p. 107, lines 1-8, **and** District Judge Singhal has denied motions *in limine* based upon these same allegations. DE 185, pp. 1-3.

later, on May 13, Grandis, through counsel, provided BGIS's counsel with a copy of the original motion to strike affirmative defenses that Grandis intended to file unless a satisfactory agreement could be reached. DE 193-1, p. 7. [2]

BGIS's counsel requested two days to review the motion before conferring. *Id.*, p. 6. During a telephonic conferral on May 15, BGIS's counsel took the position that Grandis's motion to strike would be mooted once BGIS added factual allegations to the effect that supposedly (1) Grandis was negligent as he never demanded the return of his Stamp or that BGIS cease using it, and (2) Annie Lasaga failed to bring Grandis's demand to attention of BGIS. Counsel for Grandis disagreed, stating that these allegations, if added, were not curative as they were merely denials of allegations in the amended complaint and legally insufficient in any event. *Id.*, pp. 1-2. Grandis's counsel waited one more day for any other curative amendment BGIS's counsel might offer, *id.*, p. 1 (3rd ¶, last sentence) and then, once again, in an attempt to close the pleadings as soon as possible, filed Grandis's original motion to strike on May 16, 2024. DE 190.[3]

**BGIS's Amended Affirmative Defenses.** Two weeks later, on May 30, 2024, BGIS filed its amended affirmative defenses. While Grandis appreciates that BGIS has eliminated three "boilerplate" defenses—failure to mitigate, unclean hands, and set-off—and removed its improper

---

[2] Faced with an impending discovery cut-off, DE 184, p. 13, in a case for which it appears this Court is preparing to set a trial date, DE 188, Grandis's counsel drafted the original motion to strike, conferred with BGIS's counsel as soon as possible, and then filed the motion as soon as it became evidence that the amendments proposed by BGIS in response to the motion would not cure the defects in the affirmative defenses. DE 190.

[3] BGIS portrays the original motion to strike as "a waste of time and resources" yet unnecessarily furnishes seven pages of "correspondence between or among counsel" contrary to S.D. Fla. L. R. 7.7(b). Instead of wasting time, Grandis is simply trying to move this case forward by closing the pleadings. To conserve resources, Grandis's counsel gave notice on the date his reply would have been due but for BGIS's last-minute amendment of its affirmative defenses that Grandis would be filing a motion to strike the amended defenses.

reservation of the right to introduced additional defenses in the future, DE 189, pp. 10-11, ¶¶ 2, 7, 9, 11, Grandis notes that the deletion of these defenses was never indicated by BGIS's counsel during the meet and confer process that took place over a three-day period before the Motion to Strike the original affirmative defenses was filed. *See* DE 193-1. More importantly, none of what remains in BGIS's responsive pleading is a legally sufficient affirmative defense.

**M**EMORANDUM OF **L**AW

**Motions to Strike under Fed. R. Civ. P. 12(f).**

"The Court may strike from a pleading an insufficient defense or any redundant . . . [or] immaterial . . . matter." Fed. R. Civ. P. 12(f). While motions to strike are not favored, courts have "broad discretion" to grant this relief, *Dionisio v. Ultimate Images and Designs, Inc.*, 391 F.Supp.3d 1187, 1191 (S.D. Fla. 2019) (citing *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317-18 (S.D. Fla. 2005)), either *sua sponte* or on motion of a party. Fed. R. Civ. P. 12(f)(1)-(2). According to the case law, motions to strike may be used to remedy common pleading defects that can lead to delay, unfairness and confusion before and during trial.

**_Denials Masquerading as Affirmative Defenses._** By its very definition, "[a]n affirmative defense is established only when a defendant <u>admits the essential facts</u> of a complaint and sets up other facts in justification or avoidance." *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (quoting *Will v. Richardson-Merrell, Inc.*, 647 F. Supp. 544, 547 (S.D. Ga. 1986). Thus, if an alleged affirmative defense is nothing more than a denial, a district court may streamline the pleadings by striking a denial posing as an affirmative defense. *See Goldstein v. Firer*, No. 1:20-cv-23402-JEM/Becerra, 2022 WL 2479237, at *4 (S.D. Fla. June 17, 2022) (striking affirmative defenses that merely denied elements of claims for relief). Here, the preface to the section of BGIS's pleading entitled "Affirmative and Other Defenses" acknowledges

6

that what it contains may be mere denials and not affirmative defenses, in DE 192, p. 10. ("BGIS does not assume the burden of proof on any of the following defenses . . . .")

*Legally Insufficient Affirmative Defenses.* District courts agree that pleadings, including, without limitation, affirmative defenses raising issues that are "legally insufficient," should be stricken. An issue is legally insufficient if "clearly invalid" or "frivolous" on the face of the pleadings. *Forsythe v. Starboard Yacht Group, LLC*, 345 F.R.D. 544 (S.D. Fla. 2023); *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002); Fed. R. Civ. P. 12(f); *see also Bynum v. Carnival Corp.*, 23-cv-23760-Altman/Becerra, 2024 WL 229545, at *1 (S.D. Fla. Jan. 22, 2024) (defense has "no possible relation to the controversy") (quoting *FAST SRL, Direct Connection Travel, LLC*, 330 F.R.D. 315, 318 (S.D. Fla. 2018)).

*Vague or Ambiguous Affirmative Defenses.* There is disagreement among judges in this Circuit as to whether the heightened pleading standard under *Twombly/Iqbal* applies to defensive pleadings that raise vague and ambiguous affirmative defenses. Some judges believe that the *Twombly/Iqbal* standard should apply to all pleadings. *See, e.g., Gomez v. Bird Automotive, LLC*, 411 F.Supp.3d 1332, 1336-38 (S.D. Fla. 2019) (Torres, M.J.); *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 650 (S.D. Fla. 2015) (King, J.); *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 684 (M.D. Fla. 2002) (Jones, M.J.). Other judges do not but agree that subdivision (c) of Rule forbids vague and ambiguous defenses. *See e.g., Dionisio v. Ultimate Images and Designs, Inc.*, 391 F. Supp. 3d at 1192-93 (Bloom, J.); *FAST SRL, Direct Connection Travel, LLC*, 330 F.R.D. 315, 318 (S.D. Fla. 2018) (Rodriguez, J.); *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 680-81 (S.D. Fla. 2015) (Moore, J.). Regardless of this long-debated issue, the common denominator in the case law is that vaguely pled or ambiguous defenses failing to give "fair notice" of the defense should be stricken with leave to amend. Several rules are applied to

determine if "fair notice" has been given, including <u>whether the defense contains any facts</u> "to show how and why the defense . . . applies to [the] case," *e.g., Delgado*, 640 F. Supp. 3d at 1291 (quoting *Losada v. Norwegian (Bah.) Ltd.*, 296 F.R.D. 688, 691 (S.D. Fla. 2013)); *see also Gomez*, 411 F. Supp. 3d at 1338; and <u>whether separate defenses are grouped together</u>. *E.g., Dioniso*, 391 F. Supp. 3d at 1193.

      **Law of Conversion in Florida.**

      As examined below, five of the remaining seven affirmative defenses concern Grandis's claim for conversion in Count V of the Amended Complaint. Two of the defenses say this explicitly, DE 192, pp. 10-11, ¶¶ 1-2, and three of the defenses, according to the allegations they contain about the Stamp, make this clear implicitly. *Id.*, pp. 11-12, ¶¶ 3-5. To facilitate the Court's analysis of these defenses, Grandis first sets forth Florida case law on the tort of conversion.

      "The essential element of a conversion is a wrongful deprivation of property to the owner." *Wilson Cypress Co. v. Logan*, 162 So. 489, 490 (Fla. 1935), *aff'd following remand*, 184 So. 331 (Fla. 1938), *followed in Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858, 860 (Fla. 1948) ("The gist of a conversion has been declared to be not the acquisition of the property of the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion.") (quoting Am. Jur.). Another essential element of conversion under Florida law is the necessity of a demand for return of the chattel over which the defendant has exercised dominion, unless the demand would have been futile. *Shelby Mut. Ins. Co. of Shelby Ohio v. Crain Press, Inc.*, 481 So. 2d 501, 503 (Fla. 2d DCA 1985), *rev. denied*, 491 So. 2d 278 (Fla. 1986); *see also Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 500 (Fla. 3d DCA 1994), *rev. denied*, 659 So. 2d 272 (Fla. 1995). Finally, even

one who innocently exercises wrongful dominion over the property of another, can be held liable for conversion. *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) ("The tort may be established despite evidence that the defendant . . . retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action."), *followed in United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009); *see also Glover v. Vasallo*, 314 So. 3d 447, 450-51 (Fla. 3d DCA 2020) (also following *Seymour*). In other words, mistake is not a defense to conversion. That being said, Grandis has alleged that BGIS's conversion of the Stamp was hardly innocent and was committed intentionally or with reckless disregard of his clear legal right to return of the Stamp. DE 171, ¶ 58.

### Application of the Law to BGIS's Amended Affirmative Defenses.

*First Affirmative Defense.* BGIS's first affirmative defense is the following sentence: "The [Amended] Complaint fails to state a claim, in whole or in part, upon which relief may be granted." The assertion that a pleading fails to state a valid claim for relief under 12(b)(6) is not considered an affirmative defense in this district. *See e.g., Boldstar Tech. LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1292 (S.D. Fla. 2007) ("Failure to state a claim is a defect in the plaintiff's claim; it is not an additional set of facts that bars recovery notwithstanding the plaintiff's valid prima facie case. Therefore, it is not properly asserted as an affirmative defense"). This is true even when a 12(b)(6) argument is accompanied by factual information. *See Gomez*, 411 F. Supp. 3d at 1338. Here, the first affirmative defense appears to be accompanied by a reference to BGIS's previous filings and the Court's ruling that Grandis could pursue nominal and punitive damages but not actual and consequential damages from the conversion. DE 192, p. 10, ¶ 1(a). This is not an affirmative defense but merely parroting of the Court's ruling that limits the type of damages Grandis can recover under Count V.

***Second Affirmative Defense.*** According to the second affirmative defense, Grandis's prima facie claim for conversion is barred under the doctrines of "waiver, estoppel, and/or laches." Grouping legal doctrines in this manner is improper. *See Dioniso*, 391 F. Supp. 3d at 1193. The ultimate facts alleged by BGIS are that Grandis neither demanded the return of the Stamp nor complained about its misuse to any manager, officer, or executive of BGIS. DE 192, ¶¶ 2(a), (b). These are not affirmative defenses but merely denials of the ultimate facts that Grandis alleged in in support of his claim for conversion. DE 171, ¶¶ 40, 42, 43, 58. Denials of elements of a claim are not an affirmative defense. *Morrison*, 434 F. Supp. 2d at 1318; *Goldstein v. Firer*, 2022 WL 2479237, at *4. Most of the other facts in the second affirmative defense attack Grandis's failure to explicitly assert a conversion theory until he filed the amended complaint. DE 192, ¶¶ 2(d)-(g). None of these allegations amount to an affirmative defense, no matter how dismayed BGIS may be with the Court's allowing Grandis leave to amend on December 20, 2023, DE 167, p. 7, and subsequence refusal to strike the Amended Complaint, DE 176, or dismiss Count V. DE 184, p. 12.  The only other fact alleged in the second defense is that Grandis "knew" BGIS had possession of the Stamp. No reported case suggests that a conversion claimant who knows the identity of the converter is barred from recovering damages. Finally, the allegation in paragraph 2(h) that "Count V is therefore barred by the doctrine of laches" is a legally insufficient defense to a claim at law for damages. *See Jeremiah's Int'l Trading Co. v. Calderone*, No: 8:14–cv–584–T–27TGW, 2015 WL 12856081, at *2 (M.D. Fla. May 22, 2015) (defense of laches stricken as defense to claim not arising in equity). Thus, Grandis requests that this entire defense be stricken.

***Third Affirmative Defense.*** In the third affirmative defense, BGIS alleges "[t]he claims in the [Amended] Complaint and any alleged damages were caused by the acts, omissions, carelessness, and/or negligence of third persons, for whom BGIS is not legally responsible." The

negligence of a third person is not a defense available to an intentional tortfeasor, *see Island City Flying Serv. V. Gen. Elec. Credit Corp.*, 585 So. 2d 274, 277-78 (Fla. 1991) (negligence of another while relevant to a negligence-based claim is not relevant to an intentional tort claim), particularly not the tort of conversion for which the tortfeasor is liable even if his exercise of dominion over the converted property is a mistake. *Seymour*, 638 So. 2d at 1047; *United Techs. Corp. v. Mazer*, 556 F.3d at 1270; *Glover v. Vasallo*, 314 So. 3d at 450-51. Moreover, the only facts alleged by BGIS in connection with the third affirmative defense are once again merely denials of the facts alleged by Grandis in Count V in support of his prima facie claim for conversion. *Compare* DE 192, p. 12, ¶ 3(a) *with* DE 171, ¶ 40. Also, regardless of BGIS's denial that its own finance manager in Pompano Beach (Annie Lasaga) communicated Grandis's complaint to BGIS, Grandis alleged that he also told other executives of BGIS, including Brian Fellows and David McGonigle, to stop using the Stamp and return it to Grandis. DE 171, ¶¶ 43, 58.

      *Fourth Affirmative Defense.* In the fourth affirmative defense, BGIS states that "[t]he claims in the [Amended] Complaint and any alleged damages were caused by the acts, omissions, carelessness, and/or negligence of Plaintiff." According to the facts added to this broad assertion, this defense also concerns Count V. In this defense, BGIS merely states that Grandis did not "properly communicate" his demand for the Stamp, and that "his omission, carelessness, and/or negligence" is the reason for his damages. DE 192, p. 12, ¶ 4(a), (b). Besides the ambiguity, this allegation is simply another denial of Grandis's allegations that he demanded BGIS stop using the Stamp and return it immediately. DE 171, ¶¶ 40, 42, 43, 58. Moreover, plaintiff's alleged negligence is not a legally sufficient defense to an intentional tort. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1358 (11th Cir. 2018) (applying § 768.81(4), Fla. Stat., comparative negligence "<u>does not apply</u> . . . to any action based upon an intentional tort"); *see also FDIC v.*

*Marine Nat'l Bank of Jacksonville*, 431 F.2d 341, 344-45 (5th Cir. 1970) (applying Fla. law) ("Contributory negligence is not available as a defense in an action sounding in trover and conversion. For contributory negligence to be a defense, the action must be one based on negligence") (citing, *inter alia*, Restatement (Second) Torts § 463 (1965)). Moreover, as stated above, that a conversion was innocent or mistaken is not a defense. *Seymour*, 638 So. 2d at 1047; *United Techs. Corp. v. Mazer*, 556 F.3d at 1270; *Glover v. Vasallo*, 314 So. 3d at 450-51.

*Fifth Affirmative Defense.* In the fifth affirmative defense, BGIS alleges that "Plaintiff's injuries and damages, if any, were caused in whole or in part by intervening and/or superseding acts or omissions of third parties, thereby barring or diminishing any recovery." Once again, the only facts alleged in support of this defense are denials of the allegations that Grandis made clear to Annie Lasaga and other executives of BGIS that the Stamp was to be immediately returned and no longer used by BGIS. Compare DE 192, ¶¶ 5(a)-(b) with DE 171, ¶¶ ¶¶ 40, 42, 43, 58. This alleged defense appears to be duplicative of the third affirmative defense, yet another reason to strike one or the other defense. Fed. R. Civ. P. 12(f) (permitting the striking from a pleading of "any redundant . . . matter"). Further, the issue raised is legally insufficient as BGIS is once again raising a negligence defense to the intentional tort of conversion.

*Sixth Affirmative Defense.* In the sixth affirmative defense, BGIS alleges that "Plaintiff's claims are barred by the doctrines of res judicata, collateral estoppel, and/or law of the case." Confusingly, the defense is raised to "Plaintiff's claims," as opposed to a particular claim, the earmark of a vague and ambiguous pleading that fails to give fair notice. *See Delgado v. Carnival Corp.*, 640 F. Supp. 3d 1286, 1290 (S.D. Fla. 2022) ("a court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint"). Of even greater importance, the

facts alleged by BGIS do not justify this group of defenses, which all appear to be legally insufficient and inapplicable to this case. Under Florida law, res judicata and collateral estoppel cannot apply as there has been no final decision or judgment, *In re Bhairo*, 630 B.R. 865, 869, n.5 (Bankr. M.D. Fla. 2021), nor has there been a final decision on interlocutory appeal to support use of the doctrine known as "law of the case." *Cambridge Univ. Press v. Albert*, 906 F.3d 1290, 1299 (11th Cir. 2018) (law of the case means that "findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal.") Instead, all BGIS refers to in the sixth defense are causes of action previously alleged by Grandis that have been the subject of interlocutory rulings in this Court, including the order that the claims under the APA be arbitrated. DE 34. Such rulings do not have a preclusive effect under the doctrines of res judicata, collateral estoppel, or law of the case. Further, Grandis has not asserted any of these dismissed claims in the amended complaint. Finally, even if BGIS may plan to assert these defenses in the future if the opportunity to do so arises, "res judicata, collateral estoppel, or law of the case" are not valid defenses at this time. *See GPM Indus., Inc. v. USCIS*, No. 21-cv-24007, 2022 WL 4181544, at *2 (S.D. Fla. Sept. 13, 2022) (striking "language . . . indicat[ing] that Defendants plan to assert the defense[ ] of . . . res judicata . . . should Defendants become aware of facts that would support them" as such language is "meaningless and has no legal effect").

**Seventh Affirmative Defense.** According to BGIS's seventh affirmative defense, "Plaintiff's claims are barred in whole or in part by the doctrine of after-acquired evidence to the extent of BGIS's investigation in this litigation uncovers additional grounds for Grandis's termination for cause." DE 192, p. 13, ¶ 7. This defense remains devoid of factual information about the subject or nature of any purportedly after-acquired evidence. As Grandis filed this case

in July 2022, BGIS has had ample time to investigate and discover information that supports this alleged defense. Moreover, after-acquired evidence is not a legally sufficient defense according to the case law. *See Valdez v. Smith & DeShields, Inc.*, No. 08-80209-Civ, 2008 WL 4861547, at *2 (S.D. Fla. Nov. 10, 2008); *see also Tomasini v. Mount Sinai Med. Ctr. of Florida, Inc.*, 315 F. Supp. 2d 1252, 1258 (S.D. Fla. 2004) ("had Mount Sinai wanted to reserve to itself the right to investigate the doctor following a termination, to ascertain whether during his tenure he had committed any acts constituting moral turpitude or gross neglect of duties, and to deny severance benefits on the basis of such after-acquired evidence, Mount Sinai, as the drafter of the amendment, could have done so. It did not, and cannot now avail itself of information gathered during the course of litigation to deny severance benefits . . . ").

<u>CONCLUSION</u>

In conclusion, Grandis requests that the Court strike all of BGIS's "Affirmative or Other Defenses." None of the allegations amount to true affirmative defenses. Many of the so-called defenses are merely denials. Most of the alleged affirmative defenses are "legally insufficient."

Respectfully submitted,

BENNETT AIELLO KREINES

3471 Main Highway, Suite 206
Coconut Grove, Florida 33133-5929
Phone: (305) 358-9011
Facsimile: (305) 358-9012

By: *   /s/ Paul Aiello*
    Michael P. Bennett, FBN 775304
    mbennett@bennettaiello.com
    Paul Aiello, FBN 909033
    paiello@bennettaiello.com
    Jeremy R. Kreines, FBN 101119
    jkreines@bennettaiello.com

14

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to S.D. Fla. L.R. 7.1, counsel for the movant has conferred with counsel for the non-movant between May 13 and May 16, 2024 before the filing of the Plaintiff's Motion to Strike the original Affirmative Defenses on similar grounds as this motion. On June 6, 2024, by electronic mail message transmitted at 10:15 p.m., I asked counsel for BGIS if BGIS would withdraw the amended affirmative defenses that are the subject of this motion as such either were not affirmative defenses or were legally insufficient or both. On June 10, 2024, at 10:54 a.m., Michael Pascoe, one of the attorneys of record for BGIS advised by electronic mail that BGIS would not withdraw the amended affirmative defenses. Thus, this motion was filed.

/s/  *Paul Aiello*
Paul Aiello

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of June, 2024, a true and correct copy of the original of this document was submitted through CM/ECF for filing and service upon the attorneys of record in this action.

/s/  *Paul Aiello*
Paul Aiello